ANNA MAHONEY, administratrix, *vs.* NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

Worcester.     September 26, 1921. — October 13, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Agency,* Existence of relation.  *Negligence,* In freight yard, Contributory,
Railroad.

A railroad corporation furnished switch engines and crews to a manufacturing cor-
poration to do work required by it in its freight yard under an agreement that
the manufacturing corporation would pay to the railroad corporation "monthly
upon presentation of bill thirty-three and one third per cent of the wages of the
engine crews and yard crews, also thirty-three and one third per cent of the value
of the fuel used by these switch engines," it being "understood that the time
of service is to be reckoned from the time the engine or engines leave the com-
pany's engine-house until their return to that house, deducting from this time
any unreasonable delay that may occur in the movement between the engine-
house and" the yard of the manufacturing corporation, and "that these switch
engines and their crews will be under your [the manufacturing corporation's]
control and direction as to the work to be performed by them in your yard,"
and that the "responsibility will rest with this [the railroad] company for any
accident or damage to equipment that may result from negligence of employees
of this company while working with these switch engines. In all other cases
this responsibility will rest with your [the manufacturing] company." *Held,*
that, while operating in the yard under the foregoing agreement, the fireman
on a switch engine was still an employee of the railroad corporation and not
of the manufacturing corporation.   Distinguishing *Coughlan* v. *Cambridge,* 166
Mass. 268.

At the trial of an action against a railroad corporation to recover for the con-
scious suffering and the causing of the death of one, who, while an employee
of a manufacturing corporation and between sixty-three and sixty-four years of
age, shortly after eleven o'clock on a dark night in August, 1917, in the course
of his duties was walking near a track in a freight yard of his employer at a
place which was lighted, when he was run into from behind by a switch engine
of the defendant which had approached without sound of bell or whistle and
was being run by a fireman in violation of a rule of the defendant, the questions
of due care of the plaintiff's intestate and of negligence of the employee of the
defendant are for the jury.

TORT, with a declaration in two counts, the first count being
under R. L. c. 171, § 2, as amended by St. 1907, c. 375, for the
causing of the death of the plaintiff's intestate, Timothy Kelley,

and the second count being for compensation for his conscious suffering. Writ dated November 15, 1917.

In the Superior Court, the action was tried before *Flynn,* J. There was evidence tending to show that the plaintiff's intestate, a man sixty-three or sixty-four years of age who was not hard of hearing and who had been employed by the American Steel and Wire Company for about forty years, in the course of his duties was in his employer's freight yard in Worcester shortly after eleven o'clock at night on August 22, 1917, and was walking near a railroad track when an engine of the defendant, being used in the yard in the circumstances described in the opinion, ran into him from the rear and inflicted the injuries which resulted in his death; that the night was dark; that electric lights were lighted near the place of the accident; that no warning sound of bell or whistle was given as the engine approached the intestate; that the engine was being operated by the fireman, the engineman being absent, in violation of the following rules of the defendant:

Rule 1197: ". . . The enginemen must personally control every movement of the engine. The fireman must not be allowed to move it, except with the approval of the superintendent or master mechanic or as provided in Rule 1242."

Rule 1242: "The fireman must take charge of the engine in the absence of the engineman, and not leave it until his return, or allow any unauthorized person to be upon it. He must not move it unless in some emergency he is instructed to do so by the conductor or other person in authority. If the engineman becomes disabled, the fireman must stop the engine and report to the conductor."

Rule 1243: "Fireman must not move engines, except as provided in Rule 1242, unless with the approval of the superintendent, master mechanic, or road foreman of engines and under such limitations as they may impose."

Other material evidence is described in the opinion. At the close of the evidence, upon motion of the defendant, the judge ordered a verdict for the defendant upon all the evidence and reported the case to this court with the stipulation that, if his ruling ordering a verdict was right, judgment was to be entered for the defendant on the verdict; if his ruling was wrong, judg-

ment was to be entered for the plaintiff for $1,500 on the first count of the declaration and for $500 on the second count.

J. H. Reid, for the plaintiff.

D. Kimball, for the defendant.

PIERCE, J. This is an action of tort to recover damages for the death and conscious suffering of Timothy Kelley, who sustained injuries and resultant death on August 22, 1917, by being knocked down by a locomotive owned by the New York, New Haven and Hartford Railroad Company while he was working for the American Steel and Wire Company in the south works, Worcester, and was walking on or near the railroad tracks of the American Steel and Wire Company in its yard.

The case comes before this court on a report of the presiding judge of the Superior Court, who directed a verdict for the defendant upon all the evidence with a stipulation of the parties that, if the order was right, judgment is to be entered for the defendant on the verdict; and if the ruling was wrong, judgment is to be entered for the plaintiff for $1,500 on count 1 for death, and for the plaintiff for $500 on count 2 for conscious suffering, the total being $2,000.

The question presented in the briefs of the plaintiff and of the defendant is, whether there was any evidence to warrant a verdict for the plaintiff upon the issue, whether the intestate was the fellow servant of the train crew and particularly of the fireman of the crew, acting as engineer, through whose alleged negligence the injury occurred; and upon the issues of the due care of the intestate and the negligence of the defendant.

The plaintiff does not controvert that the general rule is that a servant of one master may, with the express or implied assent of that servant, be lent to another for a particular employment with the result that the servant lent or hired while thus employed becomes the fellow servant of the employers of the latter with an assumption of all risks which in law are incident to that relation. *Hasty* v. *Sears*, 157 Mass. 123. *Ward* v. *New England Fibre Co.* 154 Mass. 419, and cases cited. *Delory* v. *Blodgett*, 185 Mass. 126. *Shepard* v. *Jacobs*, 204 Mass. 110. He relies upon the exception to the general rule which is well established in this Commonwealth, that drivers of horses, automobiles, locomotives and perhaps other vehicles of travel, when lent with the vehicles pre-

sumptively remain the servants of the general employer and are subject to his control in so far as pertains to the care, management and preservation of the property. *Huff* v. *Ford,* 126 Mass. 24. *Reagan* v. *Casey,* 160 Mass. 374. *Driscoll* v. *Towle,* 181 Mass. 416. *Shepard* v. *Jacobs, supra. Hunt* v. *New York, New Haven & Hartford Railroad,* 212 Mass. 102. *Centrello's Case,* 232 Mass. 456.

The defendant, not disputing the rule or the exception thereto, contends that the exception is without force and a nullity, and that the general rule obtains and governs, where by the terms of the contract between the employers, with the express or implied assent of the servant, the substituted master is given control of the driver as well as the direction of the time and place where the driver is to perform his part in the work sought to be accomplished. *Coughlan* v. *Cambridge,* 166 Mass. 268. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12. *Scribner's Case,* 231 Mass. 132.

The case of *Coughlan* v. *Cambridge, supra,* is decisive and supports the directed verdict unless the case at bar can be distinguished in its material facts from the facts disclosed in the record of the Coughlan case. In the Coughlan case by the contract between the city and the railroad company, the latter agreed "to furnish for the use of the city a locomotive and twenty dump cars, together with conductor, engineer, fireman and one brakeman to manage the same; said train to be used for the purpose of transporting gravel and other material for filling the low ground around the northwesterly side of Fresh Pond in said Cambridge, and to be furnished for as long a time of continuous service as the city may desire." The railroad company agreed "to keep the said locomotive and cars in proper repair, and to furnish all fuel and necessary supplies for the same." The company also agreed "to lay about one mile of track to be used in said filling, to furnish rails, ties and other material for the same, and to take up and remove said track after said filling shall have been completed." The city agreed to pay $400 a mile for the use of the track, thirty-five cents apiece for the ties and thirty-seven dollars per day, Sundays excepted during the continuance of the work. It also agreed to assume all risk of injury to any of the trainmen. The evidence warranted the jury in finding that:

the accident was due to the negligence of the engineer.  Upon the contract and upon the facts, the jury could warrantably have found that the train and trainmen were under the control of the conductor who received directions from an employee of the city and not of the railroad company.  Upon these facts the court said, as a reason for its decision that the presiding judge was right in refusing to rule that the trainmen and Leland were not in law in the employ of the defendant: "A locomotive and cars without men to run them would have been useless.  Instead of hiring trainmen outside, the city hired them of the railroad with the train.  No doubt it was expected by the company and the city that the men hired of the company would continue to run the train till the work was finished.  But there was nothing in the contract which prevented the city from discharging the men, and hiring others in their places, if it saw fit to incur the additional expense which would be thus caused."

In the case at bar by the contract between the railroad company and the American Steel and Wire Company the railroad agreed to provide "switch engines and crews to do the work required in the yard," of the south works in Worcester of the American Steel and Wire Company, upon the agreement of the American Steel and Wire Company "to pay monthly upon presentation of bill thirty-three and one third per cent of the wages of the engine crews and yard crews, also thirty-three and one third per cent of the value of the fuel used by these switch engines."  By the contract "It is understood that the time of service is to be reckoned from the time the engine or engines leave the company's engine-house until their return to that house, deducting from this time any unreasonable delay that may occur in the movement between the engine-house and your yard."  By the terms of the contract "It is also understood that these switch engines and their crews will be under your control and direction as to the work to be performed by them in your yard [that of the American Steel and Wire Company].  The responsibility will rest with this [the railroad] company for any accident or damage to equipment that may result from negligence of employees of this company while working with these switch engines.  In all other cases this responsibility will rest with your company The American Steel & Wire Company."

In the case at bar as in *Coughlan* v. *Cambridge, supra,* the train crews were subject to the direction of the master servant of the employer by whom the engine and cars were hired so far as concerned what work was to be done and how it was to be done. In the case of *Coughlan* v. *Cambridge, supra,* the engines, cars and men were lent for an indefinite term to be used and to perform the specified work upon the premises of the city of Cambridge and at no other place. In the case at bar the engine, cars and crew were moved as occasion required from the engine-house of the defendant over its tracks, to the tracks of the American Steel and Wire Company, within an enclosure there to do the work called for by the contract and then to return to the place from whence they came. In the case of *Coughlan* v. *Cambridge, supra,* the hiring of the crew was separable from the hiring of locomotive and cars. As said in the opinion, "there was nothing in the contract which prevented the city from discharging the men, and hiring others in their places." In the case at bar it is plain the contract did not permit of the American Steel and Wire Company discharging the crew and hiring others. The railroad company assumed responsibility "for any accident or damage to equipment that may result from negligence of employees of this company while working with these switch engines." This responsibility manifestly contemplated that those in charge of the equipment, the engineer and fireman, and possibly the conductor, should remain employees of the railroad company for the preservation of its property.

The difference in facts in the two cases pointed out makes it plain that the issue of fact should have been submitted to the jury under proper instructions and that the rule of the case of *Coughlan* v. *Cambridge* did not require a directed verdict.

As regards the issue of the due care of the plaintiff aided by St. 1914, c. 553; G. L. c. 231, § 85, it is obvious it could not be ruled as a matter of law that the plaintiff was guilty of contributory negligence.

As regards the issue of the defendant's negligence, it is clear that the evidence should have been submitted to the jury and that it would warrant a finding of a disregard of the rules relating to the operation of the locomotive by the fireman in the

absence of the engineer, and in thus operating the engine with no one to keep a lookout on the left side of the engine.

The ruling directing a verdict was wrong. In accordance with the terms of the report judgment is to be entered for the plaintiff for $1,500 on count 1 for death and $500 for the plaintiff on count 2 for conscious suffering, the total being $2,000.

*So ordered.*