PAUL T. KEANEY's (dependents') CASE.

Suffolk.   October 4, 1960. — December 29, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Workmen's Compensation Act,* Identity of employer. *Contract,* Of employment. *Agency,* Lent employee.

In a workmen's compensation case where it appeared that a large crane with two operators was hired for use on a project after the close of

---

the regular working day of the operators for their own employer, evidence warranting findings that with respect to their work on such project the operators consented to being employed by the hirer of the crane, were to be paid by him, and became subject to his direction and control justified a conclusion that they were his employees while engaged in that work, so that his insurer, rather than the insurer of their general employer, was liable to pay the compensation due by reason of the death of one of the operators occurring, while he was so engaged, through electrocution when the crane came into contact with electric wires.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Good, J.*

*George M. Herlihy, (Charles B. Gray, Jr.,* with him,) for Maryland Casualty Company.

*James C. Gahan, Jr., (Paul A. Kelley* with him,) for Massachusetts Bonding and Insurance Company.

SPALDING, J. On June 25, 1956, Paul T. Keaney was electrocuted in an accident arising out of and in the course of his employment. This appeal is to determine which of two insurers must pay the benefits provided by the workmen's compensation act. More specifically, the issue is whether at the time of the accident the deceased was the employee of C. J. Langenfelder & Son, Inc. (Langenfelder), insured by Maryland Casualty Company (Maryland), or of Consolidated Builders, Inc. (Consolidated), insured by Massachusetts Bonding and Insurance Company (Bonding). The single member found that he was the employee of Consolidated and ordered Bonding to make the payments required by G. L. c. 152. The reviewing board, however, found that the deceased was the employee of Langenfelder and ordered Maryland to make the required payments. A decree was entered accordingly in the Superior Court, from which Maryland appealed.

The reviewing board found the following facts. The deceased was employed by Consolidated as an assistant crane engineer. He was assigned to a twenty-five ton motor driven crane. "[H]is duties included cleaning, greasing

and oiling the crane, driving the rig (on which the crane . . . [was] mounted) from place to place, and keeping the whole equipment in operable condition.'' He worked a forty hour week, stopping daily at 4:30 P.M. On June 25, 1956, Langenfelder was a general contractor with respect to a portion of a toll road under construction in the vicinity of Auburn. Consolidated was building bridges as a subcontractor in the same general area. Sometime that day the two companies, through their agents, made an agreement whereby Langenfelder hired the crane for use in a project which was to commence at the close of Consolidated's work day. In accordance with an established practice between the two companies for such rentals, Langenfelder was to be responsible for any damage to the crane, other than fair wear and tear, and was to be liable for damages to ''anyone around the crane while it was being used in Langenfelder's work.'' An hourly rental was to be paid, and Langenfelder was to provide insurance and was to return the rig so that it would be available for Consolidated the next day.

One Boisvert, a vice-president of Consolidated, notified the crane engineer that Langenfelder was to use the crane at the end of the day[1] and the engineer replied that he and the deceased ''were pleased at the opportunity to earn some . . . 'overtime.' '' ''It was the custom in the trade that the regular crew of a crane had preference to man the crane when rented, during . . . overtime . . . uses.'' If the regular crew were not available or were unwilling to work overtime, Langenfelder could employ its own operators upon obtaining the consent of the union. ''There was the general understanding among the parties that if the regular crew were to work the crane on this occasion . . . Langenfelder would, as on previous occasions, carry the crane crew for overtime on its own payroll and would afford workmen's compensation protection to them.''

After 4:30 P.M. on June 25 the deceased drove the rig to the place where Langenfelder's work was to be done. Upon

---

[1] And the reviewing board inferred, ''and therefore . . . [found], that the crane engineer relayed the information to the assistant engineer, the deceased.''

arrival, the crew attached Langenfelder's "headache ball" (a large block of iron which is raised to a height by the crane and then dropped to break up rock or concrete). "In view of the weight of the headache ball, the boom of the crane had to be kept high." A foreman of Langenfelder pointed out a culvert to be demolished and as the deceased was maneuvering the rig into position, the cables holding the high boom came into contact with electrically charged wires. The current from the wires was transmitted to the cab and the deceased was electrocuted.

The question is whether the reviewing board could have found that the deceased became an employee of Langenfelder. We are of opinion that it could. "It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become as to that service the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Coughlan* v. *Cambridge,* 166 Mass. 268, 277. *Langevin's Case,* 326 Mass. 43, 47. There was evidence that the deceased gave the necessary consent to the change of employers. See *Langevin's Case,* 326 Mass. 43, 47–48. Compare *Abbott* v. *Link-Belt Co.* 324 Mass. 673, 675–677; *Brooks's Case,* 338 Mass. 692, 694. He signed a "W-2 form" so called which authorized Langenfelder to withhold deductions from his wages for Federal income taxes. Langenfelder was also to "make deductions ... for social security requirements." Consolidated's operations were closed for the day, and the board could have found that the deceased was subject to the "direction and control" of Langenfelder in carrying out the job. See *Langevin's Case,* 326 Mass. 43, 46. Apparently Langenfelder's foreman did no more than point out the culvert to be demolished. But one may be a servant though "so much more skilled than the master that actual direction and control would be folly, for it is the right to control rather than the exercise of it that is the test." *McDermott's*

*Case,* 283 Mass. 74, 77. *Langevin's Case,* 326 Mass. 43, 47–48.

There is, however, an exception to the rule that one who is the general servant of another may be lent to another for some special service so that he becomes the servant of such third party. " [D]rivers of horses, automobiles, locomotives and perhaps other vehicles of travel, when lent with the vehicles presumptively remain the servants of the general employer and are subject to his control in so far as pertains to the care, management and preservation of the property." *Mahoney* v. *New York, N. H. & H. R.R.* 240 Mass. 8, 10–11. *Emack's Case,* 232 Mass. 596, 598. *Wall's Case,* 293 Mass. 93, 94. But this is no more than a presumption and may be rebutted. *Emack's Case, supra,* at page 598. Although the accident occurred in connection with the operation of the lent equipment (compare *Scribner's Case,* 231 Mass. 132; *Langevin's Case,* 326 Mass. 43), the exception which usually obtains in such a case is not necessarily applicable here. The type and extent of control over the manner in which the crane was operated could be found to be significantly different from the type of directions given, for example, by one renting a vehicle and driver. See *Coughlan* v. *Cambridge,* 166 Mass. 268, 277–278; *Shepard* v. *Jacobs,* 204 Mass. 110, 112–114. It is to be noted that the reviewing board found that "[i]t made no difference to Consolidated whether Langenfelder used . . . [its] own engineers on the crane or the engineers of Consolidated." The board could have found that at the time of the accident the crew was primarily under the control of Langenfelder in the care and management of the crane. The question of control was one of fact, and the board's decision, which was supported by evidence, cannot be set aside, even though the evidence would warrant a contrary conclusion. *Wanders's Case,* 308 Mass. 157, 160–161.

*Decree affirmed.*