PAUL HARRINGTON *vs.* H. F. DAVIS TRACTOR COMPANY, INC.
& another.

Suffolk.    May 1, 1961. — June 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Common employment, Action against third person.    *Agency,* Lent employee.

Evidence merely that a salesman trying to sell a certain kind of crane to a contractor building a highway bridge, an insured under the workmen's compensation act, G. L. c. 152, offered to the contractor to demonstrate such a crane at the site of the construction, that the contractor agreed to the demonstration and said he would give serious consideration to buying the crane, and that the salesman in behalf of his employer hired such a crane with an operator for the demonstration did not warrant a finding that within § 18 of the act there was any contract between the contractor and the salesman's employer, or between such employer and the owner of the hired crane, to do any of the contractor's work; and an employee of the contractor injured during the demonstration through negligence of the operator of the crane was not barred by the doctrine of "common employment" from maintaining an action under § 15 of the act for such injuries against the owner of the crane and the salesman's employer.    [677–678]

Evidence left it a question of fact whether an employee of the owner of a crane, furnished with the crane as its operator when it was rented for the purpose of being demonstrated to a contractor to whom the hirer had been trying to sell such a crane, remained an employee of the owner of the crane or was a lent employee of the contractor while operating the crane during the demonstration at the site of highway bridge construction being performed by the contractor; the evidence did not warrant a finding that in such operation the operator was a lent employee of the hirer of the crane.    [678–679]

TORT.    Writ in the Superior Court dated October 12, 1957.

The action was tried before *Meagher, J.*

*Bertram A. Sugarman,* for the defendant H. F. Davis Tractor Company, Inc.

*Joseph P. Rooney, (John H. Goewey* with him,) for the defendant Marr Equipment Corporation.

*Joseph W. Breen,* for the plaintiff.

SPALDING, J.   The plaintiff, an employee of M. DeMatteo Co. (DeMatteo), brings this action of tort against Marr Equipment Corporation (Marr) and H. F. Davis Tractor Company, Inc. (Davis), to recover for injuries alleged to have been sustained through the negligence of a person employed by both defendants.   The jury returned a verdict against each defendant.   The case comes here on the defendants' exceptions to the denial of their motions for directed verdicts.

We summarize the evidence as follows: On the day the plaintiff was injured, October 15, 1956, he was employed by DeMatteo which, as general contractor, was building a bridge for the Southeast Expressway in the vicinity of the Neponset Circle.   One of the operations in building the walls of the bridge was to pour concrete from a bucket raised by a crane.   The plaintiff's job was to tell the crane operator where to "spot" these buckets and "to open . . . [them] so the concrete would empty into a hopper . . . along the wall."   DeMatteo's own cranes had been used "many times" for this work.   DeMatteo's superintendent was in charge of the job and was the plaintiff's immediate supervisor.

During the summer of 1956, one Jenkins, a salesman for Davis, had been trying to sell a particular model of a truck crane to one DeMatteo (presumably an officer of DeMatteo). After several conversations with DeMatteo, Jenkins offered to demonstrate this crane on the job.   DeMatteo agreed to the demonstration saying that "if Davis sent the crane out and he liked its operation . . . [he] would consider more seriously purchasing it."   Jenkins on behalf of Davis then arranged to rent this model from Marr for October 15, 1956.   Marr, which was in the crane rental business, was to supply an operator and oiler and was to take care of taxes, insurance, fuel, and lubrication.   One of the two employees sent along with the crane by Marr was one Mooney, an oiler.   Mooney's job was to drive the crane to the job site, to set it up for operation, and to assist the operator in any way, which included operating the crane.

He was directed to report to the job site and he "imagined" that he reported to the DeMatteo foreman. At the time of the accident he was operating the crane, which was lifting a bucket to the plaintiff who was on a staging. Mooney did not stop the crane in time and the plaintiff was injured when the bucket pinned him against the staging.

1. The evidence warranted a finding that Mooney was negligent and that the plaintiff was in the exercise of due care; the contrary has not been argued. Both defendants do contend, however, that the work that was performed by the crane and its operator Mooney was "part of or process in, the trade or business" of the plaintiff's employer, DeMatteo (which, it is stipulated, was a general contractor insured under G. L. c. 152), and that the common employment doctrine embodied in §§ 15 and 18 of G. L. c. 152 bars tort recovery in this action. If § 18 is applicable, the insurance of DeMatteo, the general contractor or common employer, covers all the employees in the common employment; and, unless common law rights have been reserved (which is not the case here), "one engaged in that common employment as contractor, subcontractor or employee cannot be a 'person other than the insured' within § 15 [of c. 152], and the injured employee has no option to sue him at common law." *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 568. We are of opinion, however, that § 18 is inapplicable to the facts of this case even if Mooney's work was "part of or process in, the trade or business" of DeMatteo.

Section 18 becomes applicable only "[i]f an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured . . . ." Thus, for that section to apply, it must be shown that there was a contract between De-Matteo and Davis. See *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150, 153; *Alberts* v. *Brockelman Bros. Inc.* 312 Mass. 486, 488. But no such contract has been established. The evidence shows only that Davis agreed to

make a demonstration, and that DeMatteo agreed to give serious consideration to the purchase of the crane.   There is no indication that this agreement was intended to be a contract to do any of DeMatteo's work.   It was rather an informal arrangement designed to enable DeMatteo to see the crane in operation.   The defendants fail to suggest how any legal significance can be attached to DeMatteo's agreement to give serious consideration to Davis's offer. Nor is there any contention that Davis was legally bound to hire the crane or to keep it on the job for any particular length of time.   See *Alberts* v. *Brockelman Bros. Inc.* 312 Mass. 486, 488-489.   Since it was not a contract to perform any of DeMatteo's work, Davis's contract with Marr was not "a contract with a sub-contractor to do all or any part of the work comprised in . . . [a] contract with the insured" within the terms of § 18.

2. Each defendant next contends that even if common law recovery is not barred by § 18, Mooney, the operator, was not, as a matter of law, its servant at the time of the accident.   The governing principles were recently restated in *Keaney's Case,* 341 Mass. 571, 574, where it was said, " 'It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become as to that service the servant of such third party.   The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired.' "   There is, however, a rebuttable presumption that " '[D]rivers of horses, automobiles, locomotives and perhaps other vehicles . . . remain the servants of the general employer and are subject to his control in so far as pertains to the care, management and preservation of the property.' "   *Keaney's Case, supra,* at page 575.   This principle is applicable here.   Mooney, as driver, oiler, and alternate operator of Marr's crane, is thus presumed to have remained the servant of Marr in the care and management of the crane.   We assume that there was evidence

sufficient to rebut the presumption. Nevertheless, the evidence did not establish that Mooney, as a matter of law, ceased being subject to Marr's direction and control at the time of the accident. See Restatement 2d: Agency, § 227. There was evidence, to be sure, that Mooney was to report to a man he "imagined" to be a DeMatteo supervisor and that DeMatteo's employees gave him directions as to what he was to do and where he was to place the bucket of concrete. This evidence, however, does not necessarily mean that Mooney became subject to DeMatteo's direction and control in the management of the crane. There was also evidence that Mooney was continually subject to Marr's orders, and that he and the other operator would have left the job with the crane whenever instructed to do so by Marr. Moreover, Mooney testified that he was responsible for the crane whenever it was in motion. It follows that whether Mooney continued to be Marr's servant was a question of fact and that Marr's motion for a directed verdict was rightly denied.

Davis's motion for a directed verdict, on the other hand, should have been granted. There was no evidence that Davis exercised or could have exercised any control over the operation of the crane. Jenkins, Davis's agent, was present for the demonstration, but he gave no instructions to the operator and the oiler. It would have been sufficient if it had been shown that Davis had a right to control the operation of the crane (see *Cowan* v. *Eastern Racing Assn. Inc.* 330 Mass. 135, 141; *Quigley* v. *Wilson Line of Mass. Inc.* 338 Mass. 125, 129) but the evidence at most showed that the operator and the oiler would take only such orders from Davis as had been transmitted through Marr, and that if Jenkins wanted to remove the crane from the job, "he would have to report to Davis, who in turn would call Marr, who in turn would tell their men to leave." As to Davis, then, Marr was an independent contractor which for all practical purposes retained control over the work of its employees. See *Fox* v. *Pallotta*, 274 Mass. 110, 113; *Kunan* v. *DeMatteo,* 308 Mass. 427, 429.

3. The exceptions of Marr are overruled. The exceptions of Davis are sustained and judgment is to be entered for it.

*So ordered.*