CHRISTINA A. MACKAY, administratrix, *vs.* GEORGE A. RATNER & others.[1]

Suffolk.   January 4, 1968. — February 1, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Workmen's Compensation Act,* Common employment, Action against third person. *Evidence,* Opinion: expert.

An action under § 15 of the Workmen's Compensation Act, G. L. c. 152, against partners engaged in a junk automobile business for personal injuries sustained by an employee of a corporation engaged in the scrap metal and waste paper business and insured under the act when, in the course of his employment, he was severely bitten by dogs kept by

---

[1] Eugene L. Ratner and William A. Ratner.

the partnership was not as matter of law barred by the doctrine of "common employment" where, although it appeared that there were certain loose arrangements between the two concerns, the evidence did not require a finding that, within § 18 of the act, there was any contract between them whereby the partnership undertook to do any of the corporation's work. [565–566]

There was on the record no error in denial of a motion to strike all the opinion testimony given by an expert witness where the motion was grounded on the mere fact that in cross-examination the witness had answered in the affirmative a question whether "the opinions . . . [were] based in part on things that . . . [counsel] told . . . [the witness] before . . . [he] came to court," and there was no further cross-examination to ascertain any specific facts not in evidence on which the opinions had been based. [566, 568]

TORT. Writ in the Superior Court dated April 15, 1963. The action was tried before *Rose, J.*

*Herbert Weissblum* for the defendants.

*Albert P. Zabin* for the plaintiff.

KIRK, J. The plaintiff brought this action of tort in four counts alleging negligence: First, against the three defendants doing business as Weg Auto Co. (Weg) to recover for conscious suffering caused by injuries inflicted on her intestate (her husband). Second, against each of the defendants individually to recover for the wrongful death of her intestate under G. L. c. 229, § 2. The jury returned a verdict for the plaintiff on the first count and for the defendant on each of the last three counts. The case is here on a consolidated bill of exceptions. The defendants excepted to the denial of their motion for a directed verdict on the first count; the plaintiff excepted to the denial of her motion to strike certain evidence offered in connection with the counts for wrongful death.

We examine first the defendants' exceptions. In so doing we summarize the evidence in the light most favorable to the plaintiff. *Duff* v. *Webster*, 315 Mass. 102, 103. *Tindall* v. *Denholm & McKay Co.* 347 Mass. 100, 101. *Carr* v. *Arthur D. Little, Inc.* 348 Mass. 469, 471. The decedent was employed by The O. Hodgkins Corporation (Hodgkins), principally owned and controlled by the defendants. On May 11, 1962, while in the course of his

employment by Hodgkins, he was attacked and severely bitten on the left leg by two German Shepherd dogs kept as watchdogs by Weg, a partnership formed by the three defendants. He was paid workmen's compensation for this injury by Hodgkins' insurance carrier. He had not reserved his common law rights.

Hodgkins was in the scrap metal and waste paper business. Weg was a licensed junk automobile dealer. Both businesses operated from a lot at 61 Mooney Street, Cambridge, and both occupied the same office at 45 Mooney Street. They had the same telephone number. Most of the employees who worked on the lot were employed and paid by Hodgkins. All employees did work for either company indiscriminately and no records were kept to determine which company had utilized any given employee's services. Only Weg was licensed to purchase automobiles with motors in them, but once any item of scrap metal had arrived at the lot, no distinction was made as to which company owned it. When scrap was sold, payment was asked in the name of whichever company needed funds. There was a separate set of books for each company, but both sets were kept by the same person. Each company had a separate workmen's compensation policy. The defendants drew salaries from Hodgkins, but had never shared any profits from Weg.

The defendants' motion for a directed verdict was based on the "common employment" doctrine which is embodied in §§ 15 and 18 of c. 152 of the General Laws. They argue that Weg was, as matter of law, a common employer with Hodgkins of the decedent. If this were so, he or his legal representative would be barred from suing either of the parties in tort since he had not notified either that he reserved his common law rights. *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 567–568. *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 190. The question of common employment is normally a question of fact for the jury. *Carr* v. *Arthur D. Little, Inc.* 348 Mass. 469, 474. See *Cozzo* v. *Atlantic Ref. Co.* 299 Mass. 260, 264. To establish the

defence, it is essential for the defendants to show that a contract, written or oral, exists between the two employers. *Harrington* v. *H. F. Davis Tractor Co. Inc.* 342 Mass. 675, 677. It is sufficient to say that the evidence presented does not require a finding that there was a written or oral contract whereby Weg undertook to do all or any part of Hodgkins' work. G. L. c. 152, § 18. Indeed, the strongest inference seems to be simply a disregard of legal form and indifferent bookkeeping. We need not speculate on the legal consequences inter se of this loose arrangement. The motion for a directed verdict was properly denied. *Harrington* v. *H. F. Davis Tractor Co. Inc.* 342 Mass. 675, 677–678. *Carr* v. *Arthur D. Little, Inc.* 348 Mass. 469, 473–474.

We turn now to the plaintiff's exceptions. The plaintiff's intestate died on July 31, 1962, as a result of a pulmonary embolism or thrombus. The plaintiff called several experts, who testified in response to direct and hypothetical questions, that the embolism was a direct result of the dog bites and the decedent's subsequent inactivity. Prior to 1962, the decedent had a compensated heart condition and was doing well. The defendants called Dr. Thomas G. Connelly, a cardiologist and internist. He examined hospital records which are in evidence and purport to describe the decedent's condition prior to the attack by the dogs and testified in response to a hypothetical question that the physical condition described in the record was an adequate explanation for the formation of a pulmonary thrombus. He then testified that the pathological procedures which the plaintiff's experts had testified they had used to reach their conclusions as to the cause of the thrombus were inadequate for that purpose. A hypothetical question was then phrased by the defendants' attorney describing the decedent's condition, the attack, his wounds, and his death as the jury could have found them to be. Dr. Connelly responded that it was his opinion that the death was not a result of the dog bites. He gave reasons for this opinion. On cross-examination he was asked the basis of his opinion as to the cause of death. We quote from the record: "A. My testi-

mony was based upon the material I reviewed, including the hospital records — plural — the information obtained from Mr. Henneberry [the defendants' attorney], the statement attributed to the decedent's attending physician, my own experience and analysis of the whole situation, and from those factors in general I arrived at a conclusion. . . . Q. Doctor, were the opinions that you gave yesterday based in part on things that Mr. Henneberry told you before you came to court? A. Yes." The plaintiff then moved that all Dr. Connelly's testimony be struck. The motion was denied.

Although a trial judge has wide discretion in the admissibility of hypothetical questions, *Davis* v. *Hotels Statler Co. Inc.* 327 Mass. 28, 31, that discretion is limited. A question must be based on evidence that has been or will be introduced. *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.* 342 Mass. 58, 66. It does not follow, however, that Dr. Connelly's answer to the question last quoted required that all his testimony be struck. His opinions were given in response to well-phrased hypothetical questions. The judge had at least twice told the jury that they were the judge of all the facts embodied in a hypothetical question and that the answer might be disregarded if they found those facts were not proved. Dr. Connelly's answer is consistent with a strict reliance on the facts hypothesized to him; it is susceptible to the interpretation that he was merely affirming that he had been afforded an opportunity to study the facts embodied in the question before the case came to trial. Whether, in the context of the trial, this interpretation is reasonable should be left initially to the trial judge and eventually to the jury — not to this court. If the plaintiff desired to elicit from Dr. Connelly any specific facts upon which his opinion had been predicated but which were not in evidence, there was an opportunity to pursue the inquiry by further cross-examination on the issue. See *M. DeMatteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 261; *LeBlanc* v. *Ford Motor Co.* 346 Mass. 225, 232. This was not done. We think there was no error

in permitting Dr. Connelly's testimony to stand and under appropriate instructions to be weighed by the jury in determining the ultimate question of causal connection. The motion to strike was properly denied.

The exceptions of both parties are overruled.

*So ordered.*