Candida **AFONSO**, Rogenio Afonso, Plaintiffs,

v.

**CITY OF BOSTON**, John H. Exner, Defendants.

Civ. A. No. 83–3105–K.

United States District Court, D. Massachusetts.

May 25, 1984.

Thomas Smith, Steven L. Hoffman, Sugarman & Sugarman, P.C., Boston, Mass., for plaintiffs.

Marianne B. Bowler, Asst. U.S. Atty., Boston, Mass., for defendants.

Claire Berman, City of Boston Law Dept., Boston, Mass., for City of Boston.

## Opinion

KEETON, District Judge.

This case presents questions concerning the interpretation of the federal medical malpractice immunity statute, 10 U.S.C. § 1089. The undisputed facts relevant to the issues before me now are that defendant John Exner treated plaintiff Candida Afonso at the Boston City Hospital in May 1981. At that time, Exner was on military duty with the U.S. Air Force. He was detailed to a private university, where he was training in a residency program at the hospital. While on the residency, Exner was not treating military personnel. Plaintiff herself was a civilian.

Afonso and her husband sued Exner and the City of Boston for malpractice in Suffolk County Superior Court. The United States Attorney, acting for Exner and the United States, then petitioned to remove the case to federal court and to have the United States substituted as a defendant in Exner's stead. These motions were made pursuant to 10 U.S.C. § 1089(a). The United States simultaneously filed a motion to dismiss, claiming that plaintiffs had not given the government notice of a claim under the Federal Tort Claims Act (F.T.C.A.), within the period required by 28 U.S.C. § 2401. Plaintiffs have opposed all these motions.

Disposition of the various issues presented by pending motions depends on the meaning of the following statutes:

The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (including medical and dental technicians, nursing assistants, and therapists) of the armed forces, ... in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) whose act or omission gave rise to such action or proceeding.

10 U.S.C. § 1089(a);

Upon a certification by the Attorney General that any person described in subsection (a) was acting in the scope of such person's duties or employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State court.

10 U.S.C. § 1089(c);

The head of the agency concerned or his designee may, to the extent that he or his designee deems appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, includ-

ing death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a Federal department, agency, or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28; for such damage or injury.

10 U.S.C. § 1089(f); and

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Although the basic facts concerning Exner's service are undisputed, the parties differ as to whether, in May 1981, Exner was acting "within the scope of his duties or employment" for the military, under 10 U.S.C. § 1089(a). Exner's status is further complicated by the arguments, made both by plaintiffs and the United States, that Exner was a "borrowed servant" within the meaning of Massachusetts agency law. Plaintiffs claim that the result of this characterization is that Exner must be considered a "servant" only of the city hospital to whom he was lent, not of the Air Force. The federal government responds that, although Exner may be characterized as a "borrowed servant" of the city, he is still to be considered an employee of the lending employer, the Air Force, for purposes of § 1089(a). One troubling implication of the

government's argument on this point is that the government declines to concede that it is vicariously liable as Exner's "master" for any tortious acts committed by Exner while he was "on loan" to the city hospital. The certification that the government has provided, pursuant to § 1089(c), states that Exner was on military duty in May, 1981. However, the certification cannot be read as a binding admission by the government that Exner, when treating the plaintiff Candida Afonso, was a servant acting within the scope of employment for the United States.

## I.

May the United States maintain (as stated in its certification) that a physician is a federal employee for the purposes of converting an action against the individual into one against the United States, while at the same time preserving the defense that the physician was not a "servant" for whose negligence the United States is vicariously liable?

■ Section 1089(c) provides that, upon certification by the Attorney General that a physician being sued "was acting in the scope of such person's duties or employment," removal of the action to federal court is proper. However, the statute goes on to say that should the district court "determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State court." *Id.* The remedy mentioned in subsection (a) is that provided under the Federal Tort Claims Act. This remedy against the United States is available only for acts performed by "any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis supplied). Thus the

plaintiffs have a remedy under the F.T.C.A. only if the United States is vicariously liable for the employee's acts under state tort and agency law principles.

■ A close examination of the malpractice immunity statute shows that Congress anticipated situations in which a physician might be a member of the military on duty and yet not be immune from individual liability. The statute provides that the government shall indemnify any physician found liable for acts performed "while acting within the scope of such person's duties if such person is ... detailed for service with other than a Federal department, agency or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury." 10 U.S.C. § 1089(f). In this context, "within the scope of duties" must be construed to mean only that the physician was on active military duty. *Cf.* 28 U.S.C. § 2671 (defining same language in § 1346(b)). It does not automatically mean that the physician was "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred," 28 U.S.C. § 1346(b). The statute anticipates that a physician may be both within the scope of his military duties *and* acting in a way that would not create vicarious liability for the United States. *See Baker v. Barber,* 673 F.2d 147, 150 (6th Cir.1982) *(per curiam ).*

This conclusion is reinforced by legislative history, which indicates that Congress anticipated cases in which the United States would be held not liable for acts of a military physician on loan to a non-federal facility. Congress recognized that "when ... [one on military duty] is assigned to other than a federal department—for example, as part of his military training a doctor is assigned to a private hospital—he may not be covered under the Federal Tort Claims Act. Subsection (f) [of § 1089] authorizes the appropriate Secretary to provide protection through indemnification or insurance to medical personnel in those situations." S.Rep. No. 1264, 94th Cong., 2d Sess. 10, *reprinted in* 1976 U.S.Code Cong. & Ad.News 4443, 4451.

■ Given this recognition of the possibility that malpractice by a military doctor may not in some circumstances be actionable under the F.T.C.A., I cannot conclude that Congress intended for a federal court to take jurisdiction of such a case simply on the bare assertion by the government that the defendant physician was in the military. If the case were not tried under the Federal Tort Claims Act, the plaintiff would have a right to a jury trial in state court against the individual doctor. The government would have me deprive plaintiffs of that right based solely on an ambiguous certification which does not concede that this is properly a case brought against the sovereign under the F.T.C.A.

The government points to *Green v. United States,* 709 F.2d 1158 (7th Cir.1983), as an instance in which the government was allowed to argue at the trial that "borrowed servant" analysis applied to relieve the government of liability, even though the individual physician had already been immunized under § 1089(a). However, in *Green,* it does not appear that the individual physician's petition to invoke § 1089(a) was ever opposed. The trial judge did note that, as a matter of policy, the government should not be allowed to have the individual defendant dismissed and then later evade vicarious liability under borrowed servant analysis. *Green v. United States,* 530 F.Supp. 633, 640 (E.D.Wis.1982). If the appellate decision is read as holding or implying that the government could have successfully avoided vicarious liability at trial after invoking § 1089(a), I must respectfully predict that, if and when confronted with this issue, the First Circuit and the Supreme Court will hold otherwise.

As noted above, to let the government in effect have it both ways is a result not anticipated by the drafters of the malpractice immunity statute. It also is unfair to plaintiffs who are forced to suffer the spe-

cial difficulties of suing the sovereign, such as losing the right to a jury trial, in cases in which they have not asserted a claim against the government and in which the government seeks to avoid liability.

There are two other distinct problems with the government's position.

First, it invites potentially troublesome conflict of interest situations when the government attorney represents both the United States and the individual physician. The physician may well wish the government to concede vicarious liability so that § 1089(a) will clearly immunize him. Yet the government attorney here, who also represents the physician, has refused to make that concession and instead, in an effort to preserve the government's borrowed servant defense, takes a position that conflicts with the physician's interests. This conflict is also illustrated by the government attorney's stance on the City of Boston's motion to refer this case to the state malpractice tribunal pursuant to Mass.Gen.Laws ch. 231, § 60B. The government attorney has opposed this referral, apparently hoping first to get a resolution of the jurisdictional issues. Yet, typically, physicians welcome referral to the tribunal, which subjects the merits of a plaintiff's malpractice claim to early scrutiny by a panel that includes a physician. If the government is forced at an early stage to choose between reliance on § 1089(a) to immunize the doctor or on borrowed servant analysis to shield the government, this conflict will, at least, not continue through the trial.

Secondly, the government's position may often lead to inefficient use of judicial resources. For instance, in cases where there is a co-defendant not amenable to suit in federal court, such as a state, removal under § 1089(c) will force plaintiff to sever or to forego suit against one defendant. Yet, as long as the borrowed servant question is present, either the federal or nonfederal employer, or both, may ultimately be found liable. If the government is al-

lowed to invoke § 1089(a) while still preserving its borrowed servant defense, plaintiffs would at best be forced to pursue duplicative suits in state and federal courts and at the worst, they may suffer a serious injustice if they abandon the suit against one defendant who may ultimately be found to be the only "master" responsible for the physician's malpractice. Forcing an early determination of the United States' vicarious liability avoids needless risk of these undesirable results.

For the foregoing reasons, I conclude that I cannot retain jurisdiction of this case simply on the ground that the doctor was in military service. As directed by § 1089(c), I am required to determine whether a remedy under the F.T.C.A. is available, and if I find it is not, to remand.[1] This requires me to determine if, under Massachusetts tort law, Exner was in May 1981 a "servant" of the United States such that the United States is liable for his acts under *respondeat superior*. It is not necessary for me to have an evidentiary hearing on this question, since the undisputed facts before me are sufficient to answer the question posed.

## II.

■ Borrowed servant analysis may be used in two distinct ways: as a sword by the plaintiff, who seeks to impose liability on the borrowing employer (whether or not the plaintiff contends that the lending employer is liable too); and as a shield by the lending employer, who seeks to avoid vicarious liability. Thus, a borrowed servant may be considered the employee of the lender or the borrower, or both. *See* Restatement (Second) of Agency § 227 (1958). Questions as to which master or masters are liable for the particular acts of the servant that gave rise to the plaintiff's claim are answered by considering the factors used generally under state agency law to define a master-servant relationship. *Id.*, Comment "c."

---

**1.** Plaintiffs have not actually moved to remand. They have, however, filed written opposition to

a petition for removal and, in conferences in chambers, have requested remand.

■ Under Massachusetts law, the critical test of a master-servant relationship is the existence of a right to control the servant's actions. *Cowan v. Eastern Racing Ass'n*, 330 Mass. 135, 111 N.E.2d 752 (1953). "It is well settled that one who is a general servant of another may be lent or hired by his master to another, for some special service, so as to become, as to that service, the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." *Coughlan v. City of Cambridge*, 166 Mass. 268, 44 N.E. 218, 219 (1896). *Accord Keaney's Case*, 341 Mass. 571, 171 N.E.2d 154 (1960). Other tests, such as who employs or pays the servant, are not decisive; they are important only to the extent that they bear on the question of control. *Cowan, supra*, 111 N.E.2d at 756.

■ In this case, the undisputed facts indicate that Exner was not under the control of the Air Force while he was providing medical services at a city hospital under the auspices of a residency sponsored by a private university. No military personnel were involved in the direction of either the hospital or the university residency program. The only interest of the Air Force in this residency was the education and training that Exner received. The military retained no right to control his provision of medical services in the hospital. The facts that Exner received a salary from the Air Force and that he may have been subject to military discipline for activities other than his provision of medical care are not decisive and do not contradict the conclusion that Exner was not under the Air Force's control in the performance of his medical functions. In a situation like this, the United States would not be liable for any torts committed by its loaned servant while he was on loan. *Ledbetter v. M.B. Foster Electric Co.*, 354 Mass. 780, 260 N.E.2d 174 (1970); *Keaney's Case, supra*, 171 N.E.2d 154.

I note that my conclusion differs from that reached in *Green, supra,* 530 F.Supp.

633, which, on similar facts, found that the military doctor continued to be the servant of the Air Force during his residency in a private hospital. *Green*, however, applied the Wisconsin test of "borrowed servant." Massachusetts law applies here.

Based on the undisputed facts material to this question, I conclude that the only finding that can be made by a fact finder, correctly applying Massachusetts law, is that Exner was not a servant of the United States with respect to his provision of service to plaintiff Afonso. *Cf. Dornan v. United States*, 460 F.2d 425, 429 (9th Cir. 1972) (worker's status considered a question of law when relevant facts are undisputed). Therefore, as a matter of law, the United States would not be vicariously liable in this case and this action can not be brought under the F.T.C.A. Accordingly, pursuant to 10 U.S.C. § 1089(c), I must deny the defense motion that the United States be substituted for John Exner as a party defendant, and must remand this case to state court where it may proceed against defendant Exner individually, as well as the City of Boston.