Neel, J.
Plaintiffs filed this action for damages, seeking recovery for negligence, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, and violation of G.L.c. 93A. Plaintiffs subsequently moved to dismiss the negligence and negligent misrepresentation counts with prejudice. Defendant now moves for summary judgment on the remaining contract and 93A claims, arguing that plaintiffs were not parties to the accounting services contract they seek to enforce. For the following reasons, defendant’s motion for summary judgment is allowed.
BACKGROUND
The following facts are not disputed.
Business Funding Group, Inc. (“BFG”) was a factoring company incorporated in September 1988. Its business was purchasing accounts receivable from various businesses at a discount. BFG funded the purchases in part with money solicited from investors known as “Participants.” Upon collection of receivables, BFG would reimburse the appropriate Participants’ accounts, pay Participants a “percentage return” (set in some agreements at thirty-six percent calculated annually), and keep any excess revenues as profit.
On May 9, 1989, BFG’s board of directors voted to hire Coopers & Lybrand (“C&L”) to perform auditing services for BFG. The minutes of the meeting indicate that the directors, realizing the “necessity for audited statements 1 . . to prepare for a possible public offering,” hired C&L to effectuate this purpose. Pursuant to several engagement letters which constitute the audit contracts entered into by C&L and BFG, C&L audited BFG’s financial statements for three periods: the year ended August 31, 1989; the four-month period from September 1, 1989 through December 31, 1989; and the year ended December 31, 1990.
The engagement letters “set forth [BFG’s and C&L’s] understanding of the terms and objectives of [C&L’s] engagement, the nature and scope of the services [C&L] will provide, and the related fee arrangements.” C&L agreed to conduct the audits according “to generally accepted auditing standards.” In response, BFG sent two letters to C&L confirming representations made by BFG regarding its finances. Neither the engagement letters nor BFG’s confirmations mention the Participants or their interests in BFG.
While auditing BFG, C&L encountered several participation agreements in which the Participants designated BFG as their agent to purchase accounts receivable. Thereafter, BFG contacted various Participants regarding the accuracy of statements prepared by C&L indicating the balance and term of promissory notes associated with the Participants’ accounts. BFG requested that the Participants confirm the accuracy of the statements directly with C&L.
Plaintiffs, at various times,[2] entered into agreements with BFG, some of which were entitled “Purchase and Sale, Agency and Management Agreement,” and thereby became “Participants.” Each Participant agreed to appoint BFG as his or her agent “for the sole purpose of engaging in purchases of accounts receivable invoices . . . ,” and “managing the collection of such invoices.” Each Participant agreed that BFG “shall have the full power and authority to execute any agreements or take any action consistent with such purpose ... in its own name on behalf of [Participant].’’
The Participants’ involvement with C&L and the audits was limited. No Participant was present during the initial meetings between C&L and BFG’s management leading to the retention of C&L. After BFG retained C&L, C&L sent audit reports to BFG’s management, not to any Participant. Neither BFG nor the Participants requested that C&L do so. C&L billed BFG directly, and BFG paid C&L for its services.
*467 BFG failed in 1992; plaintiffs allege that it was essentially a Ponzi scheme. Plaintiffs contend that C&L’s failure to adhere to a variety of accepted accounting practices rendered the financial statements audited by C&L materially misleading, and constituted a breach of contract. In lieu of pursuing a negligent misrepresentation claim against C&L to recoup their losses, the Participants allege that, as disclosed principals of BFG, they have rights under the audit contracts C&L allegedly breached. Defendant asserts that BFG entered the audit contracts on its own behalf, not as the agent of the Participants, and therefore that the Participants have no rights under the audit contracts.
DISCUSSION
I. SUMMARY JUDGMENT
The court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Regrading v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law. ” Pederson v. Time, Inc., 404 Mass. 14, 1617 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts [establishing] the existence of a genuine issue of material fact to defeat [the] motion.” Pederson v. Time, Inc., supra, 404 Mass. at 17. Aparty moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that he nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “[T]he opposing party cannot rest on his or her pleadings and mere assertions of undisputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
II. AGENCY RELATIONSHIP
In Massachusetts, an agency relationship is one which arises “from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act.” Harrison Conference Servs. of Massachusetts v. Commissioner of Revenue, 394 Mass. 21, 24 (1985) (quoting the Restatement (Second) of Agency §1(1) (1958). To prove an agency relationship, plaintiffs must show that: (1) BFG had the power to alter the legal relationships between the Participants and C&L and between the Participants and BFG; (2) BFG had a fiduciary relationship with the Participants regarding matters within the scope of the agency; and (3) the Participants had and exercised their right to control BFG’s conduct with respect to the auditing contracts. Cf. Restatement (Second) of Agency §§12-14 (articulating essential characteristics of an agency relationship). See also Sabel v. Mead Johnson & Co., 737 F. Supp. 135, 138 (D.Mass. 1990) (same).
In determining the existence and scope of an agency, the courts have focused predominantly on the issue of control. See Cowan v. Eastern Racing Assn, Inc., 330 Mass. 135, 141 (1953) (noting that right to control is a primary consideration in determining existence of agency).[3] Other factors considered are the language of the agreement and the factual circumstances surrounding the agreement. See Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1090 (1st Cir. 1989); In Re Shulman Transport Servs., Inc., 744 F.2d at 295.
For example, when the parties are sophisticated and bargaining at arm’s length, the corn! will give considerable weight to the terms of the agreement in determining the existence and scope of an agent’s duties to the principal. See Fashion House, Inc. v. K Mart Corp., 892 F.2d at 1090. The label the parties attach to their agreement is not dispositive of the issue. See In Re Shulman Transport Servs., Inc., 744 F.2d at 295 (district court was not bound to find an agency merely because the parties termed it a “Cargo Agency Agreement”); see also In Re Drexel Burnham Lambert Group, Inc. 113 B.R. 830 (S.D.N.Y. 1990) (one does not become an agent merely by being named as such). Furthermore, the circumstances may indicate a limited agency in which an individual is an agent only with respect to one part of an undertaking. See Shea v. Bryant Chucking & Grinder Co., 336 Mass. 312, 314 (1957), overruled on other grounds, 355 Mass. 463 (1969). Finally, the courts recognize that authority to act for a particular purpose does not translate into authority to act generally on behalf of the principal. See East Hampton Bank & Trust Co. v. Collins, 287 Mass. 218 (1934).
Applying the foregoing principles to the undisputed facts of this case, the court concludes that plaintiffs’ contract claims must fail.[4] Foremost, plaintiffs have failed to set forth any basis upon which a fact finder could conclude that they actually controlled BFG’s conduct regarding the auditing contracts. The Participants never attempted to control the details of the auditing services requested by BFG or provided by C&L. Nor did they control the amount and terms of payment. Cf. Alfonso v. City of Boston, 587 F.Supp. at 1347 (finding hospital, not United States, controlled details of Air Force Doctor’s employment at hospital); In Re Shulman Transport Enterprises, Inc., 744 F.2d at 295 (holding airline carrier’s failure to exercise control over alleged agent’s collection of funds fatal to agency claim). In fact, the Participants’ only contact with C&L was to confirm, at BFG’s request, the accuracy of statements relating to their accounts.
BFG, for its part, apparently never attempted to obtain reimbursement from the Participants for the auditing services. As a mere agent for disclosed principals, BFG would not be liable on the contract to C&L, cf. Porshin v. Snider, 349 Mass 653, 655 (1965) (unless *468 otherwise agreed, a party attempting to contract on behalf of a disclosed principal does not thereby become a party to the contract), and would be entitled to reimbursement from the Participants.
Moreover, the plain language of the participation agreements appointing BFG “for the sole purpose” of purchasing accounts receivable establishes that the Participants contemplated only a limited purpose agency. BFG, therefore, had authority only to purchase accounts receivable, and, by the broader language permitting BFG “to take any action consistent with such purpose,” authority to take action necessary to effectuate that purpose.
When the participation agreements’ agency provision is read with the subsequent provision absolving the Participants from any “responsibility for the management of the collection of payment” of the accounts, two things become apparent. First, the Participants’ right to control did not extend to contracts with third parties relating to collecting payment on accounts. Second, the Participants intended to incur no liability on any such contracts.
Even if the court were to construe BFG’s agency authority to include entering into the audit contracts with C&L, the inquiry is not ended. Principals seeking to enforce such contracts bear the burden of demonstrating not only that their agent had the authority to contract on their behalf, cf. Pattelena v. Segel, 346 Mass. 726 (1964) (holding that principal bears burden of showing agent’s authority), but also that the agent did so act. Cf. Patterson v. Barnes, 317 Mass. 721, 723 (1945) (noting that fundamental to an agency relationship is that the agent must “do something for, or on behalf of the principal"). Here, the undisputed facts demonstrate that BFG hired C&L to further its own purpose of determining the feasibility of a public offering.[5] BFG, having engaged C&L to pursue its own interests, did not thereby act as the Participants’ agent. Therefore, plaintiffs are not entitled to pursue a claim for breach of the auditing contracts against C&L.
II. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
Having determined that plaintiffs were not parties to the auditing contracts entered into by BFG and C&L, the court will also grant summary judgment against plaintiffs on their claim for breach of the covenant of good faith and fair dealing. Absent a valid contract, no claim for breach of the covenant of good faith and fair dealing will lie. See Levenson v. L.M.I. Realty Corp., 31 Mass.App.Ct. 127, 131 (1991).
III. VIOLATION OF CHAPTER 93A
Defendant requests summary judgment on the Chapter 93A claim on the ground that C&L had no business relationship with the Participants.[6] Plaintiffs correctly assert that their lack of a contractual relationship with C&L does not preclude their 93A claim. Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass.App.Ct. 545 (1995). Rather, plaintiffs must show that they had a “commercial relationship” with defendant, “or that defendant’s actions interfered with ‘trade or commerce.’ ” First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 347 (1997).
Here, plaintiffs have failed to establish any business relationship between the Participants and C&L. The Participants, as noted above, lacked a contractual relationship with C&L. Nor have they offered evidence of some other type of business relationship, for example, participating in the negotiation of the audit contracts. The mere fact that Participants, after BFG retained C&L, contacted C&L directly to confirm account balance information, does not establish the requisite business relationship. Cf. Lambert v. Fall River Five Cent Savings Bank, 3 Mass. L. Rptr. 633, 634 (May, 31, 1995) (citing Standard Register Co. v. Bolton-Emerson, Inc., supra (section 11 applies only between parties having some transactional business relationship)).
Plaintiffs assert that, even absent any business relationship,' they fall within that class of persons whom C&L should have foreseen would receive and rely upon the audit reports. Arguing that the Supreme Judicial Court has not ruled on the specific privity and reliance standards to which auditors should be held, see In the Matter of the Liquidation of American Mutual Liability Insurance Co., 417 Mass. 724, 737 n.9 (1994), plaintiffs look to the principles stated in H. Rosenblum, Inc. v. Adler, 461 A.2d 138, 152 (N.J. 1983). There the court stated that an auditor’s duty was to “all those to whom that auditor should reasonably foresee as recipients from the company of the statements for its proper business purposes, provided that the recipients rely on the statements pursuant to those business purposes.” Id. at 153.
Even assuming that Rosenblum (a negligent misrepresentation case) states the standard which should be applied to a c. 93A claim, plaintiffs have failed to carry their burden on summary judgment. Defendant has asserted, in the Affidavit of Demos Kouvaris, para. 12, that C&L never sent its audit report to any Participant; that BFG never directed that the reports be sent, or stated that it would send any of C&L’s reports, to any Participant; that no Participant ever requested a report from C&L; and that the audit reports were never addressed to anyone other than BFG’s Board of Directors. Plaintiffs have offered no evidence, by affidavit or otherwise, that they, or any of them, relied on the audit reports. The contrary is suggested by plaintiffs motion to dismiss, with prejudice, Counts III and IV for negligence and negligent misrepresentation.
Accordingly, even assuming that C&L submitted its reports for the purpose of “influenc[ing] an external marketplace,” and to “inject itself into ‘trade or commerce’ ” by making false statements, First Enterprises, Ltd. v. Cooper, supra at 348, and further assuming that plaintiffs were part of that external marketplace — both dubious assumptions — plaintiffs *469 have failed to demonstrate a genuine issue as to their reliance on the allegedly false statements.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED.

 The record indicates that some Participants named as plaintiffs had not yet contracted with BFG when C&L sent its last engagement letter, dated April 12, 1991.

 See also In re Shulman Transport Enterprises, Inc. 744 F.2d 293, 295 (2nd Cir. 1984) (finding no agency absent critical element of control by principal over funds collected by alleged agent); Sabel v. Mead Johnson & Co, 737 F.Supp. at 138 (noting that courts look primarily to issue of control); Alfonso v. City of Boston, 587 F. Supp. 1342, 1347 (D.Mass. 1984).

 Although the existence of an agency relationship is generally a question of fact, Rans Nat’l Communications, Inc. v. Overlooked Opinions, Inc., 877 F.Supp. 35, 44 (D.Mass. 1994), where, as in this case, the material facts are not in dispute, the court may decide the issue by applying the relevant legal principles. See Alfonso v. City of Boston, 587 F.Supp. at 1342 (holding that Air Force doctor was not agent of the United States based upon undisputed facts).

 The minutes of BFG’s board of directors meeting reflect this fact. Moreover, plaintiffs concede that BFG hired C&L “to further BFG’s plans to offer its stock publicly.” Plaintiffs’ Memorandum In Opposition to Defendants’ Motion for Summary Judgment at 3.

 G.L.c. 93A, §§2 and 11, “make unlawful ‘unfair or deceptive acts or practices in the conduct of any trade or commerce’ between two businesses.” Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729 (1989).