JAMES J. McPADDEN *vs.* W. J. HALLORAN COMPANY.

Worcester.    September 23, 1958. — December 5, 1958.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Workmen's Compensation Act,* Common employment, Action against third
person, Independent contractor. *Law or Fact.*

If facts in an action show that work done by a contractor plainly is "part
of or process in, the trade or business carried on" by an insured within
§ 18 of the workmen's compensation act, G. L. c. 152, or plainly is not,
the question of "common employment" of the contractor and the in-
sured is one of law for the court; otherwise it is for the trier of facts.
[192]

In an action of tort under G. L. c. 152, § 15, brought by a steel worker
employed by a concern primarily engaged in the fabrication of steel
and miscellaneous iron work and insured under the workmen's com-
pensation act against an independent contractor for injuries negligently
caused the plaintiff, evidence that the insured had undertaken to fabri-
cate and ship steel beams and to instal them in a building under con-
struction, that its truck took the beams to the construction site, that
it hired from the defendant a mobile truck crane and crane operator to
move the beams from the truck at the site into the building under the
supervision and with the assistance of the insured's employees but
with responsibility for the operation of the crane in the defendant's
employees upon signals being given, and that the plaintiff was hit and
injured when the boom of the crane collapsed while lifting beams from
the insured's truck into the building required rulings as matter of law
that the defendant's work was "part of or process in, the trade or busi-
ness carried on by the insured" within § 18 of the act, and not "merely
ancillary and incidental" thereto, that the defendant was engaged in
"common employment" with the insured, and that the plaintiff could
not recover. [192–193]

TORT. Writ in the Superior Court dated August 24, 1954.
The action was tried before *Meagher,* J.

*Matthew R. McCann,* (*Eugene N. Rosenberg* with him,) for
the plaintiff.

*Bertram A. Sugarman,* for the defendant.

WHITTEMORE, J. This action of tort was brought in the
right of the plaintiff, an employee of Stafford Iron Works,

Inc. (Stafford), for the benefit of the plaintiff and of Stafford's insurer under the workmen's compensation act (G. L. c. 152) against a contractor of Stafford which, it could have been found, negligently injured the plaintiff. The plaintiff excepted to the action of the trial judge in entering a verdict for the defendant under leave reserved.

The case involves application of the doctrine of "common employment," restated in *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 567–570, which implements the purpose of the workmen's compensation act "to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer insured under the act . . ." (*Bresnahan* v. *Barre*, 286 Mass. 593, 597) and requires that workmen on the same job stand on an equal footing in respect to injuries caused by anyone engaged in the common activity. *Bindbeutel* v. *L. D. Willcutt & Sons Co.* 244 Mass. 195, 198. *Catalano* v. *George F. Watts Corp.* 255 Mass. 605, 606.

We hold that, for reasons to be stated, and notwithstanding the jury's special findings to the contrary, the evidence required the ruling which the trial judge in effect made that the defendant's work was "part of or process in, the trade or business carried on by the insured" and was not "merely ancillary and incidental" thereto (G. L. c. 152, § 18) and that, therefore, the defendant was engaged in "common employment" with the insured. As such the defendant "cannot be a 'person other than the insured' within § 15 [of c. 152], and the injured employee [not having reserved common law rights] has no option to sue him at common law." *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 568.

The jury could have found facts as follows:

The plaintiff was injured on November 27, 1953, while working in Shrewsbury as a steel worker for Stafford. Stafford had sold and agreed to install the steel members, or beams, for a steel frame "rising stage" in a restaurant building under construction. In accordance with its practice it fabricated the steel members at its plant. Fabrication included cutting, punching rivet holes and painting. Staf-

ford hired from the defendant (Halloran) a mobile truck crane and two men to move the fabricated members from Stafford's truck at the construction site into the building. The plaintiff was hit when the boom of the crane collapsed while lifting from the truck steel members which were too heavy for the boom in the position in which it had been placed.

Stafford was engaged primarily in the fabrication of steel and miscellaneous iron work. The bulk of Stafford's production of fabricated steel was delivered F. O. B. the job site, and it erected only about six per cent of all the steel it fabricated. Stafford used a mobile truck crane on about twenty-five per cent of all the steel it erected. It did not own such a crane and did not have any personnel qualified to operate one. It invariably used a mobile truck crane in erecting heavy structural steel, such as that being placed in the building in Shrewsbury. When ordering a crane, Stafford would specify the boom length but give no other specifications. It customarily paid an hourly rate for the crane, operator, and oiler and received a bill at the end of the month for a certain number of crane hours. The crane personnel were paid by the crane company. Crane rental in 1953 represented about one per cent of Stafford's operating costs.

At the Shrewsbury job, a Stafford truck brought the steel members to the site. A Stafford foreman supervised the operation; one of his duties was to see that the crane was securely set in place. Two Stafford employees working in Stafford's truck fixed the crane hooks suspended from the cables on the boom to the steel members on the truck. Stafford employees signalled for all movements of the crane but Halloran employees were solely responsible for its operation upon receipt of signal. In order to free the truck promptly, the crane first delivered the steel members to the basement floor where Stafford employees were stationed to disengage the hooks. Stafford employees would later affix the hook to the member to be moved, signal the crane to lift each member into place in the frame, secure the mem-

ber in place temporarily by a few bolts and disengage the hook.

The plaintiff contends that our cases show that, on these facts, the relationship of the defendant to Stafford's work was for the jury. We disagree. In cases where the facts do not show that the work done "plainly is a part of" the principal contractor's work (*Cannon* v. *Crowley*, 318 Mass. 373, 3.76) or plainly is not, there is a jury question. See such cases as *Comerford's Case*, 229 Mass. 573; *Cozzo* v. *Atlantic Ref. Co.* 299 Mass. 260; *Alberts* v. *Brockelman Bros. Inc.* 312 Mass. 486; *Dubois* v. *Soule Mill*, 323 Mass. 472; *Abbott* v. *Link-Belt Co.* 324 Mass. 673; *DeMartin* v. *New York, N. H. & H. R.R.* 336 Mass. 261. But this case, we think, stands with other decisions where the facts required a finding of "common employment" and in which we have ruled accordingly. *Willard* v. *Bancroft Realty Co.* 262 Mass. 133. *Carlson* v. *Dowgielewicz*, 304 Mass. 560. *Roby* v. *Boston & Maine R.R.* 337 Mass. 369. See also *Whitehouse* v. *Cities Serv. Oil Co.* 315 Mass. 108, and *Bencivengo* v. *Walter C. Benson Co. Inc.* 319 Mass. 110, where as a matter of law we held that the work was outside the "common employment." This case is similar in an important aspect to the *Carlson* case, *supra*, where the plaintiff, an employee of the insured, was injured by a contractor in the course of delivery by him of cement aggregate to the road construction project of the insured. In the *Bencivengo* case, *supra*, we said (pp. 114–115) that reference to the original record in the *Carlson* case showed that the statement that the "contract was part of or process in the trade or business carried on by the insured . . . rested upon facts in evidence, substantially admitted in the plaintiff's brief, to the effect that the general contractor himself operated a mixing plant about two and one half miles from the job, where he mixed the aggregate, and whence he procured it to be transported to the scene of his work. No argument was made in that case that the transportation was not part of or process in the contractor's business."

In the case before us likewise the moving of the steel by

the crane was immersed in the work which Stafford had contracted to do. We need not determine whether it could reasonably be found that installation had not begun because the steel members came to rest briefly on the basement floor. The facts are equally compelling if the first movement of the steel is deemed the final stage of shipment. Stafford's work began with fabrication. The steel had to be moved from fabrication point to installation point. Stafford was doing the shipping itself under its contract. The plaintiff himself asserts that "Stafford's responsibility under its contract was to fabricate, ship, and install the steel frame members . . .." The fact that shipment was an integral part of the continuous job which Stafford had undertaken to perform distinguishes the present case from those on which the plaintiff relies where we held that the question whether transportation was part of the "common employment" was for the fact finder. *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150. *Cannon* v. *Crowley*, 318 Mass. 373. In the *Caton* case, the plaintiff, an employee of a trucker hauling bales of wool from Pennsylvania, was injured while unloading the wool at the defendant processor's warehouse in Boston. In the *Cannon* case, the plaintiff, also employed by a trucker, was injured in unloading the defendant's power shovel which he had transported from an excavation job at Camp Edwards to Quincy. See also *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 570, where we said that moving pipes from the railroad station to the plant where the plaintiff's employer was to install them under its contract "could be found . . . to be within the common employment."

The conclusion that the defendant's work was plainly an integral part of the plaintiff's work is not made in any degree less certain by the principles to which the plaintiff refers, and which are stated or exemplified in appropriate cases, that common employment does not necessarily arise because the employees of the defendant and of the insured work together, *Abbott* v. *Link-Belt Co.* 324 Mass. 673, or because the defendant's work is necessary to the insured's business,

*Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150, 154, or because the insured's employees could have done the same work, *Corbett's Case*, 270 Mass. 162, 166.

In the circumstances it is not important that the contractor was performing a specialized task which Stafford and, as the plaintiff could have shown, other builders in the area customarily hired out. In *Cannon* v. *Crowley*, 318 Mass. 373, 375–376, we indicated that such evidence was relevant where the relationship between the businesses was not clear but said, "Of course, one cannot shift liability to pay compensation to those injured in the performance of work that plainly is a part of his business by letting it out to an independent contractor." There is no ambiguity here as to what constituted Stafford's business. What was done was Stafford's work, and it makes no difference that construction work in which Stafford would move steel members represented only a small percentage of Stafford's total operation. Nor is it significant that here only a single operation was delegated while, in the more usual case, there is a delegation of a multiple task. See *Willard* v. *Bancroft Realty Co.* 262 Mass. 133, 135 (welding and cutting metal on a building construction job).

That it could have been determined in a case where the issue arose that the crane operator had not become the servant of Stafford under the borrowed servant doctrine (see *Emack's Case*, 232 Mass. 596) would not mean that his work for Halloran was not in the "common employment" of Stafford for purposes of G. L. c. 152, § 18.

We have considered all the points made by the parties in their able briefs and find no error.

*Exceptions overruled.*