WILLIAM G. STEWART, JR. *vs.* ROY BROS. INC.

Middlesex.    November 4, 1970. — December 21, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Negligence*, Flammable substance, Dangerous substance, Contributory negligence, Assumption of risk, "Active-passive" negligence. *Workmen's Compensation Act*, Common employment, Action against third person. *Indemnity. Joint Tortfeasors*.

In an action by an employee of a public warehouseman against a trucker for injuries sustained by the plaintiff, while transferring ethyl acetate from a railroad car into a tank in the defendant's truck by means of a soft hose and a pump located on the truck about six inches from its exhaust pipe and powered by its engine, when the plaintiff heard a loud roaring noise and let go of the hose, which "kicked out" of the tank and sprayed him with ethyl acetate, and his clothes ignited from a fire on the truck, evidence warranted a finding of negligence on the part of the defendant in that the pumping arrangement presented an unreasonable danger of ignition of the ethyl acetate vapors and was

an unsafe method of loading, or in that the hose was an improper one since it was not a hard hose in common use which would "lock into" the tank [451–452]; the plaintiff was not barred from recovery as a matter of law by reason of contributory negligence or assumption of risk [453].

In an action by an employee of a public warehouseman insured under the Workmen's Compensation Act, G. L. c. 152, against a general freight carrier for injuries sustained from a fire while loading the defendant's tank truck with ethyl acetate which the defendant was to deliver to a customer of the owner of the acctate, an insured corporation engaged in a business involving the distribution of chemicals, the evidence as a matter of law did not warrant a finding that the transportation activities of the defendant were a part of or a process in the business of the owner of the chemicals within § 18 of the act, and the plaintiff was not barred by the doctrine of common employment from maintaining the action. [455–457]

A trucker justifiably found liable in an action for its negligence to an employee of a public warehouseman for injuries sustained on the warehouse premises while the trucker's driver and the warehouseman's employee were participating in transferring ethyl acetate from a railroad car into the trucker's tank truck in accordance with an improper procedure of the warehouseman involving the use of a pump located on the truck close to the exhaust pipe and powered by its engine, was barred by its, the trucker's, own negligence from obtaining indemnity from the warehouseman on the alleged ground that the warehouseman failed to maintain its premises in a condition reasonably safe for use by the trucker as a business invitee [457–458]; nor was the trucker entitled to such indemnity on the alleged ground that the warehouseman had a contractual obligation to the trucker to conduct the loading operations in a reasonably safe manner, since there was no evidence of a contract express or implied between them [458]; or on the alleged ground that the trucker was not a joint tortfeasor in pari delicto with the warehouseman and was only liable to the injured employee as a consequence of the warehouseman's negligence [458].

TORT. Writ in the Superior Court dated July 24, 1964. The action was tried before and reported by *Ponte*, J.

*Robert E. Fast* for William G. Stewart, Jr.

*Edward J. Barshak,* for Roy Bros. Inc.

*David W. Kelley* for Standard Storage Co.

TAURO, C.J. This case is before us on several questions of law reported by the Superior Court after verdict and with the assent of all parties. G. L. c. 231, § 111.

The action originally was one of tort brought by William G. Stewart, Jr. (Stewart) against Roy Bros. Inc. (Roy) for personal injuries sustained by·Stewart while in the employ of

Standard Storage Company (Standard) as a result of the alleged negligence of Roy. Standard was impleaded by Roy for indemnification against any judgment Stewart might recover against Roy.

At the close of the evidence, Roy and Standard as defendants moved for directed verdicts in their favor. Roy's motion was denied. Standard's motion was allowed as to count 2 of the third party declaration, and denied as to counts 1 and 3. The jury returned a verdict in the sum of $92,500 for Stewart against Roy, and returned a verdict in the same amount for Roy against Standard on counts 1 and 3 of the third party declaration. Before the verdicts were recorded, the trial judge reserved leave to enter verdicts for Roy and Standard as defendants. They seasonably filed motions that verdicts be entered in their favor in accordance with the leave reserved by the court.

The basic question reported is the propriety of the rulings of the trial court in denying the motions of the defendants Roy and Standard for directed verdicts in their favor on the counts against them. In deciding the correctness of each of these rulings "we need only consider evidence favorable to the [particular] plaintiff from whatever source it came . . . . If upon any reasonable view of the evidence there is found any combination of circumstances from which a rational inference may be drawn in favor of the plaintiff, then there was no error in the denial of the motion, even if there may be other and different circumstances disclosed in the evidence which, if accepted as true by the jury, would support a conclusion adverse to the plaintiff. The question presented by the motion was not the weight of the evidence but whether there was any evidence viewed in the light most favorable to the plaintiff that would support . . . [his or its] cause of action." *Howes* v. *Kelman,* 326 Mass. 696-697. *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302. *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719.

The evidence is summarized: Stewart was seriously injured on October 25, 1963, while employed by Standard and while assisting in transferring liquid chemicals from

a railroad car to a tank truck on the premises of his employer, Standard. At the time of the accident Stewart was assisting in loading ethyl acetate into a tank truck owned and operated by Roy. The ethyl acetate was stored by Standard for the owner, Union Carbide Corporation (Union Carbide). Roy was to make delivery of the ethyl acetate to a customer of Union Carbide. During the loading process there was a fire or flash explosion.

Standard was engaged in the business of "public warehouseman," storing chemicals for fifteen or twenty different companies. One of these companies was Union Carbide for which Standard stored chemicals, including highly flammable ethyl acetate. Standard did not own, buy or sell any of the materials. It merely stored the property of others. Union Carbide owned the ethyl acetate involved in the accident. It owned or leased railroad tank cars in which chemicals were delivered to Standard. Some Union Carbide chemicals were delivered to Standard by truck. Standard was the only warehouse used by Union Carbide in Massachusetts at or about the time of the accident; and truckers would come to Standard to pick up ethyl acetate for delivery to Union Carbide customers. There was no evidence for jury consideration as to the general nature of Union Carbide's business nor was there any evidence that Union Carbide made its own deliveries of chemicals to customers in its own tank trucks.

Roy was in the business of "general freight," picking up both liquid chemicals and dry freight. It had been a "certified carrier" for twenty years. Roy owned about twelve tractors and about twelve tanks. Roy picked up only Union Carbide chemicals at Standard; but it also picked up liquid chemicals for delivery from various other depots in Massachusetts, including those of Monsanto Chemical, Dewey & Almy, Reichhold Chemicals, Gulf, Esso, and Shell. Standard was one of three places at which Roy would pick up flammable liquids. Roy was one of several truckers which came to pick up chemicals at Standard. Roy had been hauling ethyl acetate, a "red label" item and a dangerously flam-

mable liquid, for four or five years before the accident. One
Ferren, the driver of the truck involved in the accident,
knew that ethyl acetate was highly flammable. He had
been given no special instructions in handling it.

At the time of the accident Stewart was thirty years of
age and had been working for Standard for about five months
as a "pumper dispatcher" which job included transferring
chemicals from railroad cars to tank trucks. He had been
doing this particular job without assistance for about three
months before the accident. At Standard the usual pro-
cedure was to pump ethyl acetate from the railroad car into
the tank of the trailer by using a pump on the truck and
the hoses which came with the trailer. There was evidence
concerning an alternative explosion-proof method involving
the use of a separate electric pump and a loading rack; but
the availability of this method at the time of the accident
was not clear on the evidence. The Roy truck which was
involved in the accident consisted of a tractor with a gaso-
line engine and a tank trailer. On the tractor just forward
of the rear wheels was a pump powered by the tractor's
gasoline engine. This pump had been installed on the trac-
tor by Roy. At the time of the accident Roy was using two
types of hose with its tank trucks, a hard hose reinforced
with wire and a more flexible soft hose. Roy was in the
process of "phasing out" the use of the soft hoses and re-
placing them with hard hoses which locked into place and
would not "kick out" of a compartment when liquid was
pumped through them.

On the day of the accident the Roy truck came to Standard
to pick up a load of ethyl acetate owned by Union Carbide
for delivery to Union Carbide customers. Stewart stood on
top of the tank trailer to assist in loading by directing the
flow of liquid chemical into the tank and to tell the truck
driver when to stop pumping. Stewart was provided with a
soft hose from the Roy truck and had to hold it in place
while loading. During the loading process Stewart heard a
loud roaring noise and let go of the hose which "kicked out"
of the tank compartment and sprayed him with ethyl ace-

tate. He saw fire toward the front of the truck. Stewart's clothing was ignited and he was severely burned.

Roy was the only trucker which came to Standard with soft hoses. About six months before the accident Standard's foreman came to the manager of Roy and told him that Standard objected to soft hoses which might come out of the compartment during loading. Roy's manager said he would take care of it.

At the trial an expert witness for Stewart testified that in his opinion the fire was caused by the ignition of ethyl acetate vapors by a spark from the exhaust system of the Roy truck engine which was used to operate the pump. An expert witness for Roy stated that in his opinion the fire was caused by static electricity generated by "splash filling" in the tank or, if the fire started at ground level, by a spark from the exhaust pipe of the truck. He further testified that it was an unsafe practice to load the compartment with the truck motor running.

Stewart did not reserve his rights to bring a common law action against Standard under G. L. c. 152, § 24. Standard and Union Carbide had workmen's compensation coverage and Stewart received workmen's compensation benefits from Standard's insurer.

## NEGLIGENCE OF THE DEFENDANT ROY.

There was sufficient evidence of Roy's negligence to warrant a jury verdict for Stewart. On the evidence most favorable to Stewart the jury could have found that Roy was negligent when it participated in an improper and unsafe practice of loading its tank truck with ethyl acetate by use of a pump attached to the truck and operated by the truck's gasoline engine; the jury could have found that this operation presented an unreasonable danger that the ethyl acetate vapors would be ignited by sparks from the exhaust pipe of the truck engine which was located about six inches from the pump. The jury could infer that Roy in providing an unsafe method of loading or in participating

in the use of an unsafe method failed to exercise the degree of care required under the circumstances. Failure to use preferred methods of operation and violation of accepted trade practices warrant a finding of negligence. *McMahon v. McHale,* 174 Mass. 320, 325. *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 609.

The jury could also have found the following: Roy was using both hard hoses and soft hoses on its trailers. Other companies used only hard hoses. Roy was phasing out the use of soft hoses but was continuing their use until they wore out. A hard hose would "lock into" the tank but a soft hose would not; and if not held in place, it would "kick out." Upon the evidence most favorable to Stewart, even if the jury found that Roy was not responsible for igniting the initial explosion or fire, the jury could have found that the "kicking out" of the hose caused Stewart to become saturated with ethyl acetate and that Roy's negligence in supplying an improper hose was a direct and proximate cause of Stewart's injuries. If Roy's negligence in this regard created an unreasonable risk of harm to Stewart, Roy may be held liable for the resulting injuries even though it did not actually ignite the fire or explosion. *Leahy* v. *Standard Oil Co. of N. Y.* 224 Mass. 352, 363 (defendant's employee spilled gasoline on premises where plaintiff's decedent worked, and decedent was injured in an explosion several weeks later). *Teasdale* v. *Beacon Oil Co.* 266 Mass. 25, 28. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501. *MacKenzie* v. *Fitchburg Paper Co.* 351 Mass. 292, 296. In these cases it was held that the defendant could be held liable to the plaintiff for damages sustained by reason of the defendant's negligence in creating an unreasonable risk of injury from fire even though the defendant was not responsible for actually igniting the fire or explosion. In other words, the jury could have found that Stewart would not have suffered the serious injuries that he did if he had not been sprayed with ethyl acetate, and further that the improper hose was a direct cause of his injuries.

CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF THE RISK.

Roy contends that Stewart is barred from recovery as a matter of law because of contributory negligence or because he assumed the risk of injury. Roy had the burden of proving contributory negligence, *Watts* v. *Rhodes*, 325 Mass. 697, 699, and assumption of the risk on the part of Stewart. *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 205. "Only in rare cases can it be ruled as matter of law that these burdens have been sustained." *Halley* v. *Hugh Nawn, Inc.* 356 Mass. 28, 30.

We conclude that Stewart was not barred from recovery as a matter of law by reason of contributory negligence or assumption of the risk. The mere fact that Stewart was aware of the risks involved in his job is not conclusive proof of either contributory negligence or assumption of the risk. *Frost* v. *McCarthy*, 200 Mass. 445, 447–448. *Sullivan* v. *Saugus*, 305 Mass. 127, 131. The evidence did not require a finding that Stewart was negligent in letting go of the hose when he heard a loud roaring noise as the fire started. The jury were warranted in finding that such an impulsive act in the circumstances was not negligence. *Green* v. *Haverhill & Amesbury St. Ry.* 193 Mass. 428, 430. Roy contends that Stewart was negligent in filling the compartment by a "splash filling" method. Stewart denied using this method; therefore, a jury question was presented. Furthermore, there was ample evidence that splash filling was not the cause of the fire. In the circumstances of this case the questions of contributory negligence and assumption of the risk were for jury determination.

## COMMON EMPLOYMENT.

Roy contends that both Roy and Standard, Stewart's employer, were engaged in doing work which was part of the business of Union Carbide, and therefore that Stewart is barred from recovery under the doctrine of common employment. At the close of the evidence Roy moved for a directed verdict on the ground that common employment had been established as a matter of law. The motion was denied sub-

ject to Roy's exception. Stewart requested an instruction to the jury to the effect that as a matter of law the defence of common employment was not a bar to his recovery. The trial judge did not give this instruction but instead instructed the jury, "If you find as a fact that Roy loaded, transported and delivered chemical products of Union Carbide repeatedly and as a regular part of the business of Union Carbide, and that it was an integral or substantial part in the business of Union Carbide, you would be justified in finding that the work performed by Roy for Union Carbide was a part of or process in the business of Union Carbide." The court submitted four special questions to the jury concerning common employment.[1] In answering them the jury found that the loading and storage of ethyl acetate by Standard was part of or process in the trade or business of Union Carbide, and not merely ancillary or incidental thereto, and that the loading, transporting and delivery of ethyl acetate for Union Carbide by Roy also was a part of or process in the business of Union Carbide, and not merely ancillary or incidental thereto.

The doctrine of common employment is derived from judicial construction of G. L. c. 152, §§ 15, 18 and 24. *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 567–568. The doctrine "implements the purpose of the workmen's compensation act 'to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer insured under the act . . .' (*Bresnahan* v. *Barre*, 286 Mass. 593, 597) and requires that workmen on the same job

---

[1] "1. Was the loading and storage of ethyl acetate by Standard Storage Co. a part of or process in the trade or business of Union Carbide Corp.?

"2. Was the loading and storage of ethyl acetate by Standard Storage Co. merely ancillary or incidental to the trade or business of Union Carbide Corp.?

"3. Was the loading, transporting, and delivering of ethyl acetate for Union Carbide by Roy Bros. a part of or process in the business of Union Carbide Corp.?

"4. Was the loading, transporting, and delivering of ethyl acetate for Union Carbide Corp. by Roy Bros. merely ancillary or incidental to the trade or business of Union Carbide Corp.?"

The jury answered "Yes" to questions 1 and 3 and "No" to questions 2 and 4.

stand on an equal footing in respect to injuries caused by anyone engaged in the common activity." *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 190. In other words, as the doctrine has evolved in Massachusetts, the immediate employer's immunity from general tort liability to his employee has been extended to all other persons engaged in a common enterprise and doing the work of a "common employer." See *Dresser* v. *New Hampshire Structural Steel Co.* 296 Mass. 97; *Pimental* v. *John E. Cox Co. Inc.* 299 Mass. 579. We hold that, notwithstanding the jury's special findings, as a matter of law the doctrine of common employment is not applicable to the present case. The available facts "plainly" show that the work of Roy was not a part of or process in the trade or business of Union Carbide, but was merely ancillary or incidental thereto. The evidence indicates that the two companies are separate, independent and distinct enterprises. "In cases where the facts do not show that the work done 'plainly is a part of' the principal contractor's work (*Cannon* v. *Crowley*, 318 Mass. 373, 376) or plainly is not, there is a jury question." *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 192. But the present case stands with other decisions where the facts required a finding that the work was outside the "common employment." *Whitehouse* v. *Cities Serv. Oil Co.* 315 Mass. 108. *Bencivengo* v. *Walter C. Benson Co. Inc.* 319 Mass. 110. Stewart was an employee of a public warehouse which stored chemicals for a large number of companies, one of which was Union Carbide. The details of Union Carbide's operation were not in evidence. Roy was a certified carrier, which picked up "general freight" from various depots for delivery. Roy was merely a transporter of goods from depots to buyers, and as part of its business it transported goods for companies one of which was Union Carbide. "One may . . . be engaged in a business that cannot be conducted unless he can secure a supply of raw material or can ship the finished product to the various markets. It is hard to imagine a business that is not dependent in some way upon transportation. In such instances, while transportation is

a necessity, it does not thereby become a part of or a process in the business but it continues as ancillary and incidental thereto." *Cannon* v. *Crowley*, 318 Mass. 373, 376. See *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150. Roy's picking up ethyl acetate at Standard for delivery to Union Carbide customers was part of the transportation process. Transportation of merchandise cannot be broken up into integral parts but must be looked at as a whole. "Transportation implies the taking up of persons or property at some point and putting them down at another." *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 472, quoting *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 203. Also, this case does not involve the clearly distinguishable situation in which a trucker was delivering materials to a construction site, or to a place where the owner of the materials was to use them. See *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565; *Carlson* v. *Dowgielewicz*, 304 Mass. 560; *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189; *Preneveau* v. *E. A. Wilson Co.* 353 Mass. 766.

Viewing the evidence in a light most favorable to Roy, we conclude that the evidence does not support a jury finding that Roy's transportation activities were part of the business of Union Carbide. In determining whether the work of an independent contractor is part of the business of an alleged common employer, "[t]he character and nature of the business must be determined, and if the work done by an independent contractor is really a branch or department of that business or a process in the business, it constitutes a part of the business itself." *Cannon* v. *Crowley*, 318 Mass. 373, 375. *Tindall* v. *Denholm & McKay Co.* 347 Mass. 100, 103. In the present case, the jury could not have determined from the evidence "the character and nature" of the business of Union Carbide and Roy's relation to that business because there was no significant evidence presented concerning this important point.[2] The jury could not make a

_____

[2] Roy produced one witness to testify about the nature of Union Carbide's business in 1963, but on cross-examination the witness admitted that his testimony was hearsay. Upon motion his testimony was struck from the record in its entirety.

determination that Roy's transportation activities were part of the business of Union Carbide unless the jury knew something about the business of Union Carbide. The evidence indicates that Union Carbide was engaged in a business which involved distribution of chemicals, but there was no evidence to indicate how Union Carbide usually distributed chemicals, whether it ever used its own trucks for that purpose, or to what extent it used common carriers other than Roy, except that there was evidence that trucking companies which came to Standard were on a list specified by Union Carbide. In the absence of such evidence, there was no basis for a jury finding that Roy's transportation activities were part of Union Carbide's business. It must therefore be ruled as a matter of law that the evidence did not support a finding of common employment. See *Whitehouse* v. *Cities Serv. Oil Co.* 315 Mass. 108.

Having concluded as a matter of law that the evidence did not warrant a finding by the jury that the relationship of common employment existed between Union Carbide and Roy, we need not reach the question whether such common employment existed between Union Carbide and Standard.

### INDEMNIFICATION FROM STANDARD.

Roy impleaded Standard as a third party defendant and sought indemnification on three theories. First, count 1. Failure of Standard to maintain its premises in a condition reasonably safe for use by Roy as a business invitee. Second, count 2. An implied contractual obligation owed by Standard to Roy to conduct loading operations in a reasonably safe manner. Third, count 3. Standard committed "active" negligence while Roy was at most responsible for "passive" negligence. The court directed a verdict for Standard on count 2 and the jury found for Roy on counts 1 and 3.

The question whether the third party plaintiff (Roy) is entitled to indemnity from an insured employer (Standard) whose negligence has caused or contributed to cause the injury of its employee (Stewart) is one of first impression in

this Commonwealth. We conclude that Roy cannot recover against Standard. Roy cannot recover on its first count, the business invitee theory, because the jury in returning a verdict for Stewart found that Roy was negligent. See *Benton* v. *Watson*, 231 Mass. 582. The court directed a verdict for Standard on count 2 (the implied contract theory that Standard owed an obligation to control and conduct the loading operations in a reasonably safe manner). Assuming that the allegations of count 2 state a cause of action, we hold that the evidence did not warrant a verdict on this count. There was no evidence of a contract express or implied as alleged.

The doctrine of active-passive negligence as advanced by Roy in count 3 has not been recognized in this Commonwealth nor are we willing to embrace this doctrine now. Therefore, we hold that count 3 did not state a cause of action and that a verdict for Standard should have been directed. The special questions put to the jury and their answers must be disregarded.[3] Roy's contention that indemnity may be allowed between negligent parties where there is a great disparity between the nature and extent of their respective conduct has no application on the facts of this case. Although this court has permitted recovery in cases of constructively negligent landowners and municipalities, it has not extended the rationale of the doctrine to facts such as in the instant case. See *Lowell* v. *Boston & Lowell R.R.* 23 Pick. 24; *Hollywood Barbecue Co. Inc.* v. *Morse*, 314 Mass. 368.

The doctrine as adopted in Massachusetts was described in *Gray* v. *Boston Gas Light Co.* 114 Mass. 149, 154. "When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible in damages for the

---

[3] "1. Was Standard Storage Co. by its agents guilty of active negligence?

"2. Was Standard Storage Co. by its agents guilty of passive negligence?

"3. Was Roy Bros., Inc. by its agents guilty of active negligence?

"4. Was Roy Bros., Inc. by its agents guilty of passive negligence?"

The jury answered "Yes" to questions 1 and 4 and answered "No" to questions 2 and 3.

act cannot have indemnity or contribution from the other, because both are equally culpable, or *participes criminis*, and the damage results from their joint offence. This rule does not apply when one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such case the parties are not *in pari delicto* as to each other, though as to third persons either may be held liable. The numerous cases in our own reports are analogous, where towns, having been held liable for an unsafe condition of the highway, have recovered from the persons whose acts caused the unsafe condition." See *Lowell* v. *Boston & Lowell R.R.* 23 Pick. 24, 31–35; *Churchill* v. *Holt*, 127 Mass. 165; *Old Colony R.R.* v. *Slavens*, 148 Mass. 363, 366; *Boston* v. *Coon*, 175 Mass. 283; *Boston Woven Hose & Rubber Co.* v. *Kendall*, 178 Mass. 232; *Hollywood Barbecue Co. Inc.* v. *Morse*, 314 Mass. 368. Indemnity is permitted only when one does not join in the negligent act, but is exposed to derivative or vicarious liability for the wrongful act of another. In such cases the court has held that plaintiffs in the indemnity actions had no participation in the negligence of the defendants. "Their subsequent negligence was rather constructive than actual." *Lowell* v. *Boston & Lowell R.R.* 23 Pick. 24, 34. Thus they were allowed to recover when they did not join in the act although they became liable in consequence of it. *Hollywood Barbecue Co. Inc.* v. *Morse*, 314 Mass. 368.

Roy contends that the view of the evidence expressed in the jury's special findings was that Roy was negligent only in its mere submission to the procedures of Standard wherein the truck pump was used. Even if Roy is correct in this regard, its acquiescence in Standard's procedure does not bring it within the rule permitting indemnity that has been applied by this court. Roy joined Standard in the negligently performed act which caused the injury. The negligence of Roy was actual rather than constructive. "It follows that the principle which . . . [Roy] invokes as the

ground of its right to recover has no application to the facts disclosed by its . . . [argument]." *Boott Mills* v. *Boston & Maine R.R.* 218 Mass. 582, 594.

In view of the conclusions we reach, it is not necessary to consider other questions reported. In any event, several of the other questions are duplications of the basic question discussed above, and several others are deemed waived because not argued by the excepting parties.

Judgment is to be entered for the plaintiff Stewart against the defendant Roy. Judgment is to be entered for the third party defendant Standard.

*So ordered.*