DONALD BULPETT *vs.* THE DODGE ASSOCIATES, INC. &
another
(and two companion cases).

Middlesex.    May 18, 1977. — August 11, 1977.

Present: KEVILLE, GRANT, & BROWN, JJ.

*Workmen's Compensation Act,* Common employment. *Negligence,*
Duty to warn, Repair, Skyworker.

Where a subcontractor furnished a specialized form of vehicle and an
operator to a principal contractor for use on a construction project,
and the operator worked under the general direction of the contrac-
tor's supervisor, the subcontractor's activities were, as matter of law,
a "part of or process in" the contractor's construction work within
the meaning of G. L. c. 152, § 18. [595-598]

In actions of tort by two construction workers who were injured in
falls from two "buckets" of a skyworker when the boom suspending
the buckets collapsed because of a defective piston rod connection,
against a company which had done repairs on the skyworker for its
owner, there was sufficient evidence to warrant a finding that the
company was under a duty to the owner to inspect the entire sky-
worker and make any necessary repairs, thus making it liable to
third persons not parties to the contract who would foreseeably be
injured as the result of its negligent failure to carry out its obli-
gations [598]; in the circumstances, the judge did not err in instruct-
ing the jury that they could find alternatively that the company had
violated a duty to warn the owner of the skyworker about possible
defects in the design of the skyworker [598-599].

In an action of tort by two construction workers who were injured in
falls from two "buckets" of a skyworker when the boom suspending
the buckets collapsed because of a defective piston rod connection,
where it was firmly established that the breakdown of the piston
rod connection caused the accident and that the threads of the
mechanism had been distorted before the skyworker was sent to a
service company for repairs, a finding was warranted that either the
company's failure to repair the mechanism or its failure to warn
the owner of the skyworker about possible defects in its design was
the proximate cause of the plaintiffs' injuries. [599-600]

TWO ACTIONS OF TORT. Writs in the Superior Court
dated February 7, 1968, and March 17, 1969, respectively.

TORT OR CONTRACT. Writ in the Superior Court dated
January 7, 1972.

The actions were tried before *J. P. Sullivan, J.*

*Hiller B. Zobel* for Consolidated Utilities Equipment Service, Inc.

*Philander S. Ratzkoff* (*Richard L. Neumeier* with him) for The Dodge Associates, Inc.

*John J. Murphy* for Wilfred Owen.

*Raymond J. Kenney, Jr.,* for Donald Bulpett.

KEVILLE, J. Donald Bulpett (Bulpett) and Wilfred Owen (Owen) were seriously injured in falls from two "buckets" of a hydraulic aerial mechanism called a skyworker when the boom suspending the buckets collapsed. At the time of the accident Bulpett was employed as an electrician by M. B. Foster Electric Company (Foster), an electrical contractor engaged in the erection and insulation of a power substation for the Boston Edison Company (Edison). Owen was a self-employed welder hired by Foster as an independent contractor to do aluminum welding at the substation construction site. Essentially, Bulpett's function was to hold sections of a prefabricated aluminum structure from his perch in one of the buckets while Owen welded the sections together from the other bucket. The accident occurred on December 18, 1967, when the steel piston rod holding the upper boom of the skyworker aloft pulled out of the aluminum block into which it was screwed.

Both men brought actions for negligence against The Dodge Associates, Inc. (Dodge), the owner of the skyworker, Consolidated Utilities Equipment Service, Inc. (CUES), the company which had repaired the skyworker for Dodge on two occasions in 1967, and Transairco, Inc. (Transairco), the manufacturer and distributor of the skyworker. The actions were consolidated for trial along with a third-party claim by Dodge against Transairco.

At trial there was substantial evidence that the piston rod connection ultimately came apart due to thread distortion in the screw mechanism caused initially by a Dodge maintenance man prior to March, 1967, and that Dodge sent the skyworker to CUES for repairs on two occasions between the time that Dodge's maintenance man damaged the screw mechanism and the accident which injured Bul-

Bulpett *v.* Dodge Associates, Inc.

pett and Owen. After the judge denied Dodge's and CUES's motions for directed verdicts, the jury returned verdicts in favor of Bulpett against Dodge and CUES and in favor of Owen against Dodge and CUES. The jury returned verdicts for Transairco in all three cases. The judge denied motions by Dodge and CUES for judgment notwithstanding the verdict and for a new trial.

Dodge appeals from the judgment entered against it in favor of Bulpett while CUES appeals from the judgments in favor of both plaintiffs.[1] We discuss their appeals separately.

### Dodge.

The only issue raised by Dodge on appeal is whether it was error for the judge to deny Dodge's motion for a directed verdict on the basis of the "common employment" defense. The parties stipulated that Bulpett received workmen's compensation for his injuries from his employer Foster pursuant to G. L. c. 152. Dodge contends that a directed verdict in its favor should have been entered in Bulpett's case[2] because Dodge had established as matter of law that it was engaged in common employment with Foster so as to remove Dodge from the category of "person[s] other than the insured" who may be held liable under G. L. c. 152, § 15. *Campinha* v. *James J. Devine, Inc.,* 1 Mass. App. Ct. 482, 483 (1973), citing *Clark* v. *M.W. Leahy Co.,* 300 Mass. 565, 568-569 (1938).[3] Although St. 1971, c. 941, amended c. 152, § 15, to eliminate the common employment

---

[1] Dodge has not pursued its appeal in its third-party claim against Transairco.

[2] Dodge did not raise the common employment defense in its motion for a directed verdict in the action brought by Owen and has not pursued its appeal against Owen.

[3] The defense not only protects principal contractors against suits by the employees of subcontractors but is applicable to cases, such as this one, where an employee of the principal contractor is suing a subcontractor for negligence. *Catalano* v. *George F. Watts Corp.,* 255 Mass. 605, 606 (1926). *Clark* v. *M.W. Leahy Co.,* 300 Mass. at 568.

defense for injuries occurring on or after the amendment's effective date, Bulpett's accident occurred in 1967 so we apply the law as it existed prior to the amendment. See *Campinha, supra,* at 483, n.1; Locke, Years of Change: Recent Development in Massachusetts Workmen's Compensation Law, 60 Mass. L.Q. 55, 74 (1975). See also *Brown* v. *Marr Equip. Corp.,* 355 Mass. 724, 727 (1969).

Central to the common employment defense was whether work performed by an independent contractor or subcontractor was a "part of or process in" or merely "ancillary and incidental to" a principal contractor's business. G. L. c. 152, § 18, as appearing in St. 1939, c. 93. *Afienko* v. *Harvard Club of Boston,* 365 Mass. 320, 323-324 (1974). Here, following the submission of special questions to the jury on that issue, the jury decided that Dodge's work was merely "ancillary and incidental" to Foster's business.

Ordinarily the existence of common employment was a question of fact for the jury. *Cannon* v. *Crowley,* 318 Mass. 373, 377 (1945). *Dubois* v. *Soule Mill,* 323 Mass. 472, 476 (1948). *MacKay* v. *Ratner,* 353 Mass. 563, 565 (1968). *Afienko, supra,* at 325. However, where the circumstances of a particular case indicated that the independent contractor or subcontractor's work was plainly part of the principal contractor's business, then the question was one of law and should not have been submitted to the jury. *McPadden* v. *W. J. Halloran Co.,* 338 Mass. 189, 192 (1958). *Afienko, supra.* See *Gauss* v. *H.N. Hartwell Co.,* 338 Mass. 353, 354-355 (1959); *Amorosso* v. *Farina Bros. Co.,* 339 Mass. 595, 596 (1959); *Pettiti* v. *McHugh,* 341 Mass. 566, 570-571 (1960).

We are of the opinion that in this case Dodge's activities were plainly "a part of or process in" Foster's construction work, and that the judge should have directed a verdict for Dodge against Bulpett on the basis of the common employment defense. In our view the case is governed by *McPadden, supra; Pettiti, supra;* and *Campinha, supra,* all of which held as matter of law that the common employment defense applied. In *McPadden* the plaintiff's employer con-

tracted with the principal contractor to deliver steel frames to the construction site and install them in place. The principal contractor supervised the placement of the steel frames, but the subcontractor's employees actually operated the crane which secured the framework in place. In *Pettiti*, the plaintiff's employer, the Commonwealth, contracted with the defendant to supply a tractor-compressor and an operator for use on a State highway construction project. The defendant's employee was operating the machine under the supervision of the Commonwealth's foreman when his negligence caused the plaintiff's injuries. In *Campinha*, the plaintiff's employer, a road building company, rented a piece of heavy construction equipment and two operators on an hourly basis from another company. The operators, under the direction of the road building company, were backing the vehicle when it struck and injured the plaintiff. The facts in this case are similar. Dodge furnished a specialized form of vehicle and an operator to Foster for use on a construction project, and the operator worked under the general direction of a Foster supervisor. We are not persuaded by Bulpett's argument that the cases which we have cited are inapposite because, as he contends, Markey, an employee of Dodge, merely operated the skyworker to hoist a Foster employee and an independent contractor to their welding jobs and was not engaged in the construction work himself. To the contrary, the operation of the skyworker was an integral part of the welding work.

Cases which Bulpett relies upon to establish a fact-finding role for the jury on the common employment question are inapposite. *Clark* v. *M.W. Leahy Co.*, 300 Mass. 565 (1938), simply involved transportation of iron pipes to a plant where they were to be installed. *Hudyka* v. *Interstate Tire & Brake Stores, Inc.*, 360 Mass. 102 (1971), dealt with the replacement of a tire on a general contractor's payloader. *Afienko* v. *Harvard Club of Boston*, 365 Mass. 320 (1974), involved injury to an employee of a maintenance company under contract to wash the windows of a private social club. In none of those cases were the plaintiffs

"plainly" engaged in work that was "a part of or process in" the defendant's normal business.

## CUES.

CUES contends that it is not liable for injuries resulting from the collapse of the boom because its only contractual responsibilities toward Dodge were to repair other parts of the skyworker unrelated to the defective piston rod connection. The president of Dodge, however, testified that in either March or July, 1967, when he sent the skyworker to CUES for certain specific repairs he also instructed CUES to conduct a thorough inspection of the skyworker and to charge Dodge for any necessary additional repairs. The jury could have believed Dodge's testimony rather than that of the shop manager of CUES to the effect that Dodge had sent the skyworker to CUES for specific repairs without any mention of an overall inspection. It was for the jury to determine, on conflicting evidence, what the scope of the agreement between Dodge and CUES was. *Atwood* v. *Boston*, 310 Mass. 70, 75 (1941). *Trafton* v. *Custeau*, 338 Mass. 305, 307-308 (1959). *Banaghan* v. *Dewey*, 340 Mass. 73, 80 (1959). CUES's obligation is measured by the terms of its contract with Dodge, and, if it was under a duty thereby to inspect the entire skyworker and make any necessary repairs, it became liable to third persons not parties to the contract who would foreseeably be exposed to danger and injured as the result of its negligent failure to carry out its obligations. *Banaghan* v. *Dewey, supra,* and cases cited.

CUES also argues that it was error for the judge to have instructed the jury that they could find alternatively that CUES had violated a duty to warn Dodge about possible defects in the design of the skyworker. In the particular circumstances of this case, viz., that CUES was one of two authorized service representatives of Transairco in New England, that new parts for Dodge's skyworkers would generally be ordered or at least billed through CUES, that CUES customarily repaired Dodge's skyworkers, that CUES knew that Transairco was using steel rather than aluminum blocks in its new skyworkers, and finally, that

CUES was aware of an announcement made by the manufacturer recommending that aluminum blocks be replaced with the harder steel blocks in older skyworkers, the jury could have found a duty on CUES's part to advise Dodge of the desirability of replacing its aluminum block. "The duty to exercise reasonable care includes a duty to warn of danger, if 'the person on whom that duty rests has some reason to suppose a warning is needed.' " *Haley* v. *Allied Chem. Corp.*, 353 Mass. 325, 330 (1967), quoting from *Carney* v. *Bereault*, 348 Mass. 502, 506 (1965).

Finally, CUES contends that, even if it was under a contractual duty to inspect and repair the entire skyworker or a duty to warn Dodge to replace the aluminum block with steel, Bulpett and Owen failed to prove that either breach of duty by CUES was the proximate cause of their injuries.

The cases cited by CUES are inapposite. This is not a case where the immediate cause of the accident is open to question and where the plaintiff must shoulder certain evidentiary burdens in order to hold a manufacturer liable. Contrast *LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 230 (1963); *Maher* v. *General Motors Corp.*, 370 Mass. 231, 233-234 (1976). Here it was firmly established that the breakdown of the piston rod connection caused the accident and that the threads of the mechanism had been distorted before the skyworker was sent to CUES for repairs. Had CUES either repaired the piston rod connection in the course of an over-all inspection or advised Dodge to replace its aluminum block with steel, the accident would almost certainly not have occurred. CUES could not relieve itself of the consequences of its failure to perform its duties so long as that failure continued and proved to be the proximate cause of the plaintiffs' injuries. *Barrett* v. *Builders' Patent Scaffolding Co.*, 311 Mass. 41, 44 (1942). CUES has not shown any intervening negligence by a third person which would break the causal connection between CUES's conduct and the plaintiffs' injuries and thereby relieve CUES of liability. Compare *Buda* v. *Foley*, 302 Mass. 411, 413 (1939); *E.H. Hall Co.* v. *U.S. Plastics Corp.*, 2 Mass. App. Ct. 169, 173 (1974). It is our conclusion that there

was no error in the judge's denial of CUES's motions for a directed verdict, judgment notwithstanding the verdict and for a new trial.

The judgment in favor of Bulpett against Dodge is reversed and a new judgment for Dodge is to be entered in the Superior Court. The judgments against CUES in favor of Bulpett and Owen are affirmed.

*So ordered.*