**George WALLACE, Administrator of the Estate of Daniel Tommy Wallace, Plaintiff, Appellant,**

v.

**SHADE TOBACCO GROWERS AGRICULTURAL ASSOCIATION, INC., et al., Defendants, Appellees.**

**No. 80–1356.**

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1980.

Decided March 4, 1981.

---

Alan L. Cantor, Boston, Mass., with whom Fredric A. Swartz and Swartz & Swartz, Boston, Mass., were on brief, for plaintiff, appellant.

Andrew B. Goodspeed, Natick, Mass., for defendants, appellees.

Before ALDRICH, PELL * and BOWNES, Circuit Judges.

PELL, Circuit Judge.

Plaintiff appeals to this court from the district court's grant of summary judgment to the defendants in plaintiff's action for the wrongful death and conscious pain suffered by plaintiff's son, Daniel Tommy Wallace.

The material facts are undisputed. Daniel Wallace drowned in a swimming pond located on the premises of Sunnyside Beach and Campground in Westfield, Massachusetts, which was operated by Henry Wilgus. At the time of his death, Daniel Wallace was employed by Consolidated Cigar Corporation as a summer worker at a youth farm work camp called Camp Clark which was leased by Consolidated from Clark Bros., Inc., and which was operated by the Shade

* Of the Seventh Circuit, sitting by designation.

Tobacco Growers Agricultural Association in association with Consolidated and various other growers of shade tobacco. Consolidated had a verbal agreement with Wilgus allowing the youth workers living at Camp Clark to use the Sunnyside Beach swimming area for a fee of 25 cents to be paid by each boy. It was during a swimming period on July 4, 1971, that Daniel Wallace drowned. At the time, Daniel Wallace and the other boys were under the supervision of two Camp Clark employees.

On February 21, 1973, plaintiff brought this action against Shade Tobacco Growers Agricultural Association, Inc., Clark Brothers, Inc., Donald Clark, Consolidated Cigar Corporation, and Henry Wilgus, d/b/a Sunnyside Beach and Campground. He alleged that each defendant negligently breached its duty to supervise adequately the swimming activities, thereby causing Daniel Wallace's death.[1] The defendants filed motions for summary judgment contending (1) that plaintiff's exclusive remedy against Consolidated was under the Massachusetts Workmen's Compensation Act, Mass.Gen. Laws Ann. ch. 152, § 26, and (2) that because the defendants were "common employers" of Daniel Wallace, they were not subject to suit under § 15 of the Act as it existed at the relevant time. Mass.Gen. Laws Ann. ch. 152, § 15. The district court accepted these arguments because the facts were not in dispute and granted summary judgment to the defendants as a matter of law. Plaintiff has appealed that decision.

### I

■ Addressing first the defendants' argument that plaintiff's exclusive remedy is under the Massachusetts Workmen's Compensation Act, we note that the immunity from private suit provided by that Act follows and presumes a compensable injury. Mass.Gen.Laws Ann. ch. 152, § 68. *Clark v. M. W. Leahy Co.*, 300 Mass. 565, 16 N.E.2d 57, 59 (1938). For the Act's relief to be afforded, the injury suffered must be one "arising out of and in the course of" the injured worker's employment. Mass.Gen. Laws ch. 152, § 26. The ultimate question, therefore, is whether the district court was correct in ruling as a matter of law that on the undisputed facts the drowning arose out of and in the course of Daniel Wallace's employment by Consolidated. We find that it was.

We start our analysis of the Massachusetts law by recognizing that no decided case goes as far as the district court did here. The question of whether an injury "arose out of and in the course of employment" has been treated as one of fact to be determined in accord with certain basic principles. The case that comes closest to a summary judgment determination is *Caswell's Case*, 305 Mass. 500, 26 N.E.2d 328 (1940), in which the court reversed a decree dismissing the claim and found that an employee who was injured at work by a hurricane was entitled to compensation even though he was not required to remain at work during the hurricane. The court stated the governing principle: "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Id.* at 330 (citation omitted).

The next case of significance is *Kubera's Case*, 320 Mass. 419, 69 N.E.2d 673 (1940). The facts are particularly pertinent to the case at bar. The employee was injured during a recess period when she was struck by an automobile operated by another employee acting within the scope of his employment. During the recess, the employee was not paid, was not under the control of the employer, and was not doing anything in connection with her work. In affirming a decree awarding compensation, the court relied on the reasoning of *Caswell's Case, supra*, and quoted the language we have noted. 69 N.E.2d at 674.

One of the most helpful discussions of the principles involved is found in *Moore's Case*,

---

1. The plaintiff's claims against two of the defendants, Clark Bros., Inc. and Henry Wilgus, were settled prior to this decision.

330 Mass. 1, 110 N.E.2d 764 (1953). The employee was injured during a Christmas party given by her employer. Her claim was dismissed by the Board and the Superior Court. The Supreme Court reversed the Superior Court and sent the case back to the Industrial Accident Board for further proceedings. The court suggested various criteria "which may be resorted to in determining whether the employment and the recreation are related with sufficient closeness to warrant an award." *Id.* at 766. The criteria included the customary nature of the recreational activity, the employer's encouragement or subsidization of the activity, the extent to which the employer managed or directed the activity, the presence of substantial pressure or actual compulsion upon the employee to attend or participate in the activity, and the fact that the employer expects or receives a benefit from the employee's participation. *Id.* at 766–67. (Citations omitted). This benefit may be simply an improved employer-employee relationship, greater efficiency in the employee's performance of his or her duties, or the advertising of the employer's business. *Id.* The court went on to note that, with the exception of actual compulsion on the employee to participate,

> the presence or absence of any one of the ... factors listed would not necessarily determine the issue. Nor, indeed, is the foregoing enumeration meant to be exclusive of other factors which might appear in a given case. What is required in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as a whole.

In reviewing a grant of summary judgment, we must, of course, view the facts in the light most favorable to the party against whom summary judgment has been granted. But, "while we believe that the plaintiff is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture." *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir. 1962).

The swimming period was an express undertaking by Consolidated pursuant to an agreement with Wilgus. His employment exposed Wallace to the risk of injury he actually suffered. *See Kubera's Case,* 320 Mass. 419, 69 N.E.2d at 674. Though Consolidated did not pay for the boys' entry fees, its providing of staff, transportation and equipment used during the periods clearly consisted of "encouragement or subsidization of the activity." The supervisors of the swimming were employees of the camp operated by Shade Tobacco in conjunction with Consolidated. Although there was no compulsion placed upon Daniel Wallace to participate in the swimming and he was not being paid or doing his assigned tasks at the time of the accident, *Moore's Case* as well as the facts of *Kubera's Case* establish that these facts need not be present. Lastly, Consolidated clearly intended to receive and received a benefit from the provisions of these recreational periods in the form of higher morale among the young workers, greater efficiency in their work, and advertising of the camp to other prospective young employees.

The facts and inferences to be drawn therefrom viewed from any perspective admit of only one conclusion, Wallace's drowning arose out of and during the course of his employment by Consolidated Cigar Corporation. Summary judgment was, therefore, properly granted under Mass.Gen.Laws Ann. ch. 152, § 68.

## II

Whether the district court was also correct in granting summary judgment to the other defendants is a separate question and one whose answer depends upon whether all defendants were engaged in a "common employment" of Daniel Wallace. If these defendants were "common employers" of Daniel Wallace with Consolidated, they would not be "person[s] other than the insured" who may be held liable under Mass. ch. 152, § 15 as it existed in 1971,[2] and

2. Although Mass.G.L. ch. 152, § 15 was amended so as to eliminate the common employment

defense for injuries occurring on or after the amendment's effective date, January 24, 1972,

thus would not properly be subject to plaintiff's suit. Although ordinarily the existence of a common employment is a question of fact for the jury, where the circumstances of a particular case indicate that the independent subcontractor's work was "plainly" part of the principal contractor's business, the question becomes one of law and need not be submitted to the jury. *McPadden v. W. J. Halloran Co.*, 338 Mass. 189, 154 N.E.2d 582 (1958); *Bulpett v. Dodge Associates*, 5 Mass.App. 593, 365 N.E.2d 1248, 1250 (1977). For this reason, we believe summary judgment was appropriate here.

■ Normally, the "common employer" defense is used to protect a subcontractor from a suit by an employee of an insured general contractor, or to protect the general contractor from a suit by an employee of an insured subcontractor. *Clark, supra* 16 N.E.2d at 58–59; *compare Pimental v. John E. Cox Co.*, 299 Mass. 579, 13 N.E.2d 441 (1938) (defense does not protect one subcontractor from suit of employee of another subcontractor where there is no contractual relationship between the two). The work of the uninsured coemployer must be an integral part of the insured employer's business to warrant the extended immunity. *Bulpett, supra* at 1251, not just ancillary or incident to that business. Mass.G.L. ch. 152, § 18, *Bulpett, supra* at 1248, *Clark*, 16 N.E.2d *supra* at 58. *See Pimental, supra* (construction work was not sufficiently related to terminal business of owner of real estate on which construction was done to extend owner's immunity to construction company), *Harrington v. H. F. Davis Tractor Co.*, 175 N.E.2d 241 (Mass.1961) (general contractor's employee could sue lessor of equipment that injured plaintiff because there was no agreement or contract between lessor and general or subcontractors to do common work, lessor only made equipment available for demonstration purposes and not in the normal course of the general contractor's business), and *Poirier v. Plymouth*, 372 N.E.2d 212 (Mass.1978) (painting business was not sufficiently related to normal operations of city water tower to warrant a finding that city and painting company were "common employers" of employee injured while painting water tower).

■ We agree with the district court's conclusion that the defendants here were engaged in a "common employment" of plaintiff's son so as to apply § 15's immunity to them. There was a written contract between Shade Tobacco and Consolidated, and both Shade Tobacco and Consolidated operated Camp Clark where Donald Clark was employed by Consolidated as a field supervisor. We have previously found that the recreational activities were supported by Consolidated and inhered in the employment relationship between Consolidated and the youth employees. The activities, in short, were an integral part of Consolidated's normal business operations and all the defendants here involved performed integral functions in the operation, supervision and maintenance of these activities. We agree with the district court that all the defendants were plainly common employers for the purposes of section 15.

The district court is, therefore, *Affirmed.*

---

Mass.Acts, 1971 ch. 941, Daniel Wallace's accident occurred in 1971 so we apply the law as it existed prior to its amendment.